469 F.2d 1371
 81 L.R.R.M. (BNA) 2885, 69 Lab.Cas. P 13,213
 LUMINATOR DIVISION OF GULTON INDUSTRIES, INC.,
Petitioner-Cross Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross Petitioner.
 No. 72-1675 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 Dec. 7, 1972.
 
 Theophil C. Kammholz, Theodore J. Tierney, Chicago, Ill., Lyne, Klein, & French, Dallas, Tex., for petitioner.
 Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Elmer P. Davis, Regional Director, NLRB, Fort Worth, Tex., for respondent.
 Before THORNBERRY, COLEMAN and INGRAHAM, Circuit Judges.
 COLEMAN, Circuit Judge:
 
 
 1
 Luminator Division of Gulton Industries, Inc. [the Company] and International Union of Electrical Radio, and Machine Workers, AFL-CIO [the Union] agreed to a consent election for employees at the Company plant at Plano, Texas. This was to be pursuant to a "Stipulation for Certification Upon Consent Election".[1] The election was held from 3:00 to 4:00 P.M. July 22, 1972, resulting in 78 votes for the Union, 61 against the Union, with 5 challenged ballots. The Regional Director certified the tally of ballots.
 
 
 2
 With the Regional Director the Company filed "Objections to Conduct Affecting the Results of the Election", contending that the election should be set aside because (1) the Union on the day prior to the election made material misrepresentations as to wages, (2) the Company after learning of the false assertion did not have time to correct the statement, (3) the Union had special knowledge as to the subject matter of the statement, and (4) the statement could not have been intelligently evaluated by the employees who received it.
 
 
 3
 The challenged statement was contained in a leaflet which the Union mailed to all employees. It was received by the employees at their home on the day before the election. It is obvious from the record that the Company had not more than twenty-six hours in which to have attempted to correct the misrepresentation.
 
 
 4
 The leaflet in large type, on the first page, stated:
 
 
 5
 "From April 6, 1970 to June 5, 1971-IUE Local 487 ((Gulton Industries), Metuchen, New Jersey, will receive a total of 44 cents per hour in wage increases."
 
 
 6
 This statement was false. The Metuchen agreement did not provide for increases of forty-four cents per hour from April 6, 1970 to June 5, 1971, but rather the increases were to take place over a period from April 6, 1970 to June 6, 1972.
 
 
 7
 Inside the leaflet the correct period of the wage increases was stated in the following form:
 
 
 8
 "All employees on the payroll April 6, 1970 shall receive wage increases of twenty (20) cents per hour . . . .
 
 
 9
 "All employees on the payroll as of May 3, 1971 shall receive wage increases of twelve (12) cents per hour . . . .
 
 
 10
 "All employees on the payroll as of June 2, 1972 shall receive wage increases of twelve (12) cents per hour . . . ."
 
 
 11
 Thus, the employees were told one thing on the front page of the leaflet and something else again on the inside -with no guide by which they could have known which of the contradictory statements was intended to be the correct one. Significantly enough, however, the false statement was given the more accessible billing.
 
 
 12
 In connection with its objections to the Regional Director as to the conduct affecting the election the Company requested a hearing. It asked the Regional Director to determine if disputed facts existed and if they did that "he designate a hearing officer to take evidence with regard thereto." The Regional Director in his Report on Objections recommended to the Board that the Company's objections to the conduct of the election be overruled and that the Union be certified as the collective bargaining representative of the employees in the appropriate unit. The Regional Director did not pass on the Company's request for a hearing.
 
 
 13
 In his report the Regional Director stated that he had made an investigation of the Company's objections to the conduct of the election. He said that whether questionable campaign communications required an election to be invalidated depended on the threefold test[2] established in Pepperell v. NLRB, 5 Cir., 1968, 403 F.2d 520, 523:
 
 
 14
 "(1) whether there has been a misrepresentation of material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth or who had special knowledge of the facts; and (3) whether the other party in the election had adequate opportunity to reply and to correct the misrepresentation."
 
 The Regional Director then held:
 
 15
 "(1) the misstatement as to wages could be considered a material misrepresentation; (2) the misrepresentation did not come from a party who had special knowledge of the true facts; and (3) the employer had ample time to communicate with its employees."
 
 The Regional Director added:
 
 16
 "[I]t must be acknowledged that this is not a situation where the employer herein discovered the misrepresentation but did not have time to understand the precise nature of the misrepresentation or did not have available to it the facts with which to refute the misrepresentation. Thus on July 21, 1971 the employer had in its possession all the facts needed to effectively overcome the misstatement in the Union leaflet.
 
 
 17
 "In conclusion it is felt that based upon the evidence relating to the specific misstatement in the instant case, along with the time of the employer's awareness of the misstatement in relation to the election to be held the following day, it is concluded that the employer had ample time to communicate with its employees in a manner other than a captive audience speech which would effectively remove any confusion among the employees in the unit herein."
 
 
 18
 The Company filed "Exceptions to the Report of the Regional Director", requesting that a hearing on the objections be held. The Company objections to the report of the Regional Director included (1) the Regional Director's failure to rule on the Company's request for a hearing and (2) the Regional Director's conclusion that the Company had ample time to rebut the Union's misrepresentation.
 
 
 19
 The Board adopted the Regional Director's fact determinations except that it found the Union did have special knowledge of the true facts. Hence, the finding that the employer had ample time to correct the misrepresentation was the crucial ground on which the election was upheld.
 
 
 20
 The Board denied the Company objections and the request for a hearing, stating:
 
 
 21
 "The employer's exceptions raise no material or substantial issues of fact or law which would warrant reversal of the Regional Director's findings and recommendations or require a hearing."
 
 
 22
 The Board then certified the Union as the bargaining representative for the appropriate unit.
 
 
 23
 The Company refused to bargain with the Union. The Union filed charges with the Board. The Board issued a complaint. The Company answered and denied violations of Secs. 8(a)(5) and 8(a)(1). The General Counsel then moved for summary judgment. The Company in its response to the motion for summary judgment requested a hearing. The Company also filed an offer of proof and a supplemental offer of proof in support of its request for a hearing.
 
 
 24
 The Board denied a hearing and granted the motion for summary judgment, holding that the Company's objections had been previously litigated before the Regional Director and the Board and that the Company "in a proceeding alleging a violation of Sec. 8(a)(5) is not entitled to relitigate issues which were or could have been litigated in a prior representation proceeding." Therefore, the Board found that the Company had not raised any issue which was properly litigable in the unfair labor practice proceeding. The Board then ordered the Company to bargain.
 
 
 25
 The case is before this Court on (1) the Company's petition for review of the Board finding that it had violated Secs. 8(a)(5) and 8(a)(1), and (2) the Board's cross petition seeking enforcement of its order.
 
 
 26
 Section 102.69(e), 29 C.F.R. 102.69(e), provides that in cases involving consent elections (pursuant to Sec. 102.62(b)-Stipulation for Certification Upon Consent Election):
 
 
 27
 ". . . if exceptions are filed . . . to the report [and] [i]f it appears to the Board that such exceptions raise substantial and material factual issues, the Board may direct the regional director . . . to issue and cause to be served on the parties a notice of hearing on said exceptions before a hearing officer." [Emphasis supplied].
 
 
 28
 The determination of whether the Company raised a substantial and material factual issue requiring a hearing is "a question of law and ultimately a question for the courts", NLRB v. Bata Shoe Company, 4 Cir., 1967, 377 F.2d 821, 826. A hearing is required when the Company presents "substantial and material factual issues", NLRB v. Gooch Packing Company, 5 Cir., 1972, 457 F.2d 361, 362.
 
 
 29
 The Union's false statement appearing on the first page of its leaflet was a material misrepresentation. "Purportedly authoritative and truthful assertions concerning wages . . . are 'not mere prattle' or puffery, [but] 'are the stuff of life for Unions"', NLRB v. Southern Foods, Inc., 5 Cir., 1970, 434 F.2d 717.
 
 
 30
 A statement as to wages goes to "a very important and basic factor bearing on the attractiveness and efficiency of the Union as the employees' representative, NLRB v. Producers Cooperative Association, 10 Cir., 1972, 457 F.2d 1121.
 
 
 31
 The Regional Director in his report on the Company's objections said that the misrepresentation as to wages "could be considered a material representation".
 
 
 32
 The Company's opportunity to reply to the misrepresentations within the twenty-six hours available certainly raised a question of material fact, United States Rubber Company v. NLRB, 5 Cir., 1967, 373 F.2d 602; NLRB v. Monroe Equipment Company, 5 Cir., 1969, 406 F.2d 177. See, also, Grede Foundries, Inc., 153 NLRB 984 (1965); Zarn, Inc., 170 NLRB 1135, 1136 (1968). We think the Company (Appendix 49-53) has raised such question regarding his opportunity to correct the misrepresentation and should have its hearing.
 
 
 33
 In NLRB v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, the Court said:
 
 
 34
 ". . . standards for the granting of summary judgment on pleadings and affidavits are instructive as to whether the Board acted within constitutional limits in failing to grant a hearing.
 
 
 35
 "In order for a case to go to a jury, the evidence must be 'of such a character that reasonable men exercising impartial judgment may differ in their conclusion'. (Citations omitted).
 
 
 36
 "'It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment."' (Citations omitted).
 
 
 37
 To be entitled to a hearing the objector must supply the Board with specific evidence which, prima facie, would warrant setting aside the election, United States Rubber Company v. NLRB, supra 373 F.2d at 606; NLRB v. Gooch Packing Company, supra; NLRB v. Bill's Institutional Commissary Corporation, 5 Cir., 1969, 418 F.2d 405; and NLRB v. Singleton Packing Corporation, 5 Cir., 1969, 418 F.2d 275. As to how specific the evidence must be the Court in United States Rubber Company v. NLRB, supra, said the objections must not be "'nebulous and declamatory assertions, wholly unspecified,' nor equivocal hearsay". Id., 373 F.2d at 606.
 
 
 38
 The Company met this standard of specificity in the objections and in the affidavits submitted to the Regional Director. These documents met the fourfold criteria established in NLRB v. Southern Foods, Inc., supra. Therefore, this was not a case where a hearing would be unnecessary, NLRB v. Air Control Products of St. Petersburg, Inc., 5 Cir., 1964, 335 F.2d 245, 249; NLRB v. Bata Shoe Company, supra, 377 F.2d at 826; and NLRB v. Singleton Packing Corporation, 5 Cir., 1969, 418 F.2d 275, 280.
 
 
 39
 This case is remanded to the Board for a hearing as to whether the Union's false statement precluded the holding of a fair election.
 
 
 40
 "Sec. 8(a)(5) orders which rest on crucial factual determinations made after ex parte investigations and without hearing cannot stand."
 
 
 41
 NLRB v. Air Control Products of St. Petersburg, Inc., supra, 335 F.2d at 249.
 
 
 42
 See, also, NLRB v. Genesco, Inc., 5 Cir., 1969, 406 F.2d 393, 397.
 
 
 43
 Enforcement denied and the case is remanded to the Board for further proceedings not inconsistent herewith.
 
 
 
 *
 Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I
 
 
 [1]
 NLRB Rules & Regulations, Sec. 102.62(b), 29 C.F.R. Sec. 102.62(b)
 
 
 [2]
 The Fifth Circuit in NLRB v. Southern Foods, Inc., 1970, 434 F.2d 717, 720, said that a fourth test had been established as follows:
 "Whether the employees had independent knowledge of the misrepresented fact so that they could effectively evaluate the propaganda." S. H. Kress & Company v. NLRB, 5 Cir., 1970, 430 F.2d 1234.