NATIONAL LABOR RELATIONS
BOARD, Petitioner

v.

MR. FINE, INC., Respondent.

No. 74–3220.

United States Court of Appeals,
Fifth Circuit.

July 17, 1975.

Elliott Moore, Deputy Assoc. Gen. Counsel, Corinna Metcalf, N.L.R.B., Washington, D. C., W. Edwin Youngblood, Director, Region 16, N.L.R.B., Ft. Worth, Tex., for petitioner.

Fritz L. Lyne, Dallas, Tex., for respondent.

Before CLARK, Associate Justice *, and GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This matter is before us on petition of the National Labor Relations Board to enforce its order that respondent, Mr. Fine, Inc. [the Company], cease and desist from refusing to bargain collectively with International Ladies' Garment Workers' Union, Texas-Oklahoma District Council, affiliated with International Ladies' Garment Workers' Union, AFL–CIO [the Union], as the exclusive bargaining representative of its production and maintenance employees at the Company's plant at 2201 South Harwood Street, Dallas, Texas.

On September 27, 1973, a representation election was held by the Company's employees. A total of 139 votes was cast—72 for the Union, 66 against, and 1 vote challenged. On October 4,

1974, the Company filed timely objections to conduct by the Union which it contends affected the outcome of the election. The Company alleged that two days prior to the election, a time which prevented its reply before election, the Union disseminated, or caused to be disseminated, to eligible voters of the Company, leaflets containing a materially false and misleading statement, from workers of a Union-represented competitive garment factory—Nardis of Dallas, Texas. The leaflet was in the form of a message "From: Folks Who Work for Nardis in Dallas" addressed "To: Folks Who Work for Mr. Fine on Harwood Street." The leaflet's message urged the Harwood Street employees to vote "Yes" in their forthcoming Union election, listed numerous benefits which the Nardis employees enjoyed as a result of their affiliation with the Union, and contained the following statement which is the basis of the Company's objections:

> *WE HAVE HIGHER MINIMUM WAGES.* The *very least* any experienced worker in our factories are paid is now $2.60 an hour. This will *go up* to $2.85 an hour in only about 18 months from now. The highest minimums we now have are $4.59 an hour—*going up* to $5.10 an hour in about 18 months.[1]

The lowest minimum ($2.60) quoted in the Nardis leaflet is paid to employees in job categories in the sewing process (which for the purpose of this discussion will be referred to as "operators"); whereas the highest minimum ($4.59) is paid to employees in the marking, cutting and spreading process (referred to herein as "markers"). "Operators" and "markers" are among several categories of garment workers employed by Nardis. However, the Company plant at South Harwood Street, which was the site of

---

\* Of the Supreme Court of the United States (Retired), sitting by designation.

1. The Company does not assert that the statement is untrue; instead, it contends that it was a half-truth, inherently deceptive and misleading. The distinction is immaterial. A misrepresentation need not be false to establish unfairness in an election. Implications, omissions or half-truths from which false inferences may be drawn, if such inferences have an impact on election results, have been accorded the same status as an outright untruth. *See* N.L.R.B. v. Bill's Institutional Commissary Corp., 5 Cir., 1969, 418 F.2d 405; Luminator Division of Gulton Industries, Inc. v. N.L.R.B., 5 Cir., 1972, 469 F.2d 1371.

the election, is engaged entirely in the sewing process, employing only workers in the "operators" category.[2] The gist of the Company's objections was that its sewing "operators" were misled to believe that Union representation would achieve for them the higher minimum wage of $4.59 actually paid to the Nardis "markers" but not identified as such in the leaflet.

### Findings of the Regional Director

The Regional Director, after investigation, found in his Report on Objections that the statement objected to by the Company was accurate and did not incorrectly state the facts. Immediately following the statement in question the following paragraph appeared in the leaflet:

> WE HAVE PROPER RATES. Our Union Contract calls for our rates to be set so that average operators can earn *at least 20% MORE* than our $2.60-an-hour operators' minimum wage. Most operators now earn around *$3.00 or more an hour. Many earn $3.00 to $4.00 an hour.* One of our Union's Engineers comes to our factory from time to time to help us make sure our rates are right.

The Regional Director was of the opinion that since the South Harwood Street plant is limited to sewing, the reference to "operators" in the above-quoted paragraph was significant. He reasoned that

> *Operators* is a customary classification in the industry which all employees in the plant would be reasonably expected to recognize as a standard of skill and compensation. Under such circumstances the employees at the South Harwood Street plant would possess sufficient knowledge with which to evaluate the complained of statement in the overall context of the leaflet.

He concluded, therefore, that the statement did not constitute a substantial misrepresentation in the context in which it was made and that it conse-

quently was irrelevant whether the distribution of the leaflet was timed so as to prevent any effective reply by the Company. He recommended that the objections be overruled and that the Union be certified.

Subsequent exceptions by the Company to the Report of the Regional Director and a request for hearing were unsuccessful. The Board adopted the findings, conclusions and recommendations of the Regional Director and certified the Union as the bargaining representative of the Company's unit. Thereafter the Company refused to bargain and the General Counsel of the Board issued a complaint on February 15, 1974, alleging unfair labor practices by the Company within the meaning of section 8(a)(5) and (1) and section 2(6) and (7) of the National Labor Relations Act. Motions for summary judgment were filed with the Board by both the General Counsel and the Company. The Board granted the former and issued its order directing the Company to bargain with the Union.

Respondent, Mr. Fine, Inc., contends that the Board erred (1) in not setting the election aside as a matter of law, and, alternatively, (2) in not granting it a hearing on its objections.

### Should the Election Be Set Aside?

■ A four-pronged test has been formulated by this Court for evaluating questionable campaign communications: (1) whether there has been a misrepresentation of a material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth, or who had special knowledge of the facts; (3) whether the other party in the election had adequate opportunity to reply and to correct the misrepresentation; (4) whether the employees had independent knowledge of the misrepresented fact so that they could effectively evaluate the propaganda. *See, e. g.,* N.L.R.B. v. Cactus Drilling Corporation, 5 Cir., 1972, 455 F.2d

2. The Company also has marking and cutting operations but these are located at another plant not involved in this dispute.

871, 874; N.L.R.B. v. Carlton McLendon Furniture Co., Inc., 5 Cir., 1974, 488 F.2d 58, 62. The Regional Director concluded that there was no misrepresentation in this case and consequently did not reach the other factors. Because of the lack of evidentiary development in both the representation and unfair-labor-practice proceedings, the record affords little guidance in assessing the effect of the Nardis leaflet. We are unable to say on the basis of the record before us that the Company at this stage of the proceedings is entitled as a matter of law to have the election set aside.

### Is a Hearing Necessary?

■ Nevertheless, we are of the opinion that the circumstances warrant a hearing. In order to obtain a post-election hearing on objections, the objecting party must supply *prima facie* evidence and present substantial and material factual issues which would warrant setting aside the election. N.L.R.B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 892; N.L.R.B. v. Bill's Institutional Commissary Corp., 5 Cir., 1969, 418 F.2d 405, 406; Luminator Division of Gulton Industries, Inc. v. N.L.R.B., 5 Cir., 1972, 469 F.2d 1371, 1374. Whether or not the objecting party has presented such issues is a matter of law and ultimately a question for the courts. Luminator Division of Gulton Industries, Inc. v. N.L.R.B., *supra,* 469 F.2d at 1374. Basically, the test is whether false or misleading statements had the effect of interfering with a free choice of bargaining representatives. Anchor Manufacturing Company v. N.L.R.B., 5 Cir., 1962, 300 F.2d 301, 303. The burden of proving such interference is of course on the objecting party. N.L.R.B. v. Huntsville Mfg. Co., 5 Cir., 1953, 203 F.2d 430. The Company should, therefore, be allowed to present such proof at a hearing inasmuch as the evidence submitted by it,

*prima facie,* shows not only deliberate misrepresentation but misrepresentation which by its nature would have the effect of changing the election results. Summary judgment was, therefore, improper.[3]

■ The Union was in an authoritative position to know that there were no "markers" employed by the Company at the South Harwood Street plant. Nevertheless, the statement included the higher minimum wages of Nardis "markers" without reference to the category of workers eligible for such wages. There is no logical reason for the inclusion of this irrelevant wage scale in the leaflet other than an attempt by the Union to deceive prospective voters into believing that greater benefits would be obtained by Union representation. Had the Union wished to inform the employees of comparable benefits for "operators" it could have accomplished this in several ways. It could have excluded from the leaflet the wages of "markers," it could have correlated the wages with the respective categories, or it could have attached to the leaflet the complete wage schedule showing the wage for each category of Nardis employees. It chose instead by its cleverly worded statement to imply that a worker at the South Harwood Street plant could by Union representation attain a wage as high as $5.10. Claims involving wages and benefits based upon unstated hypotheses constitute a *prima facie* misrepresentation. N.L.R.B. v. Bill's Institutional Commissary Corp., 5 Cir., 1969, 418 F.2d 405, 407; N.L.R.B. v. Houston Chronicle Publishing Company, 5 Cir., 1962, 300 F.2d 273, 279. Nor can we agree with the Board that the paragraph next following the objectionable paragraph had the effect of nullifying the initial impression. There is no basis in the record for the Board's conclusion that the Company employees would possess sufficient

---

**3.** "It is often the case that although the basic facts are not in dispute, the parties nevertheless disagree as to the inferences which may properly be drawn. Under such circumstances the case is not one to be decided on a motion for summary judgment." *See* N.L.R.B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 893.

knowledge with which to evaluate the statement. We cannot reasonably indulge in such a presumption.

Another indication that the Union presumed and intended the statement to mislead and thereby influence the election results was its last-minute distribution of the leaflet, thus effectively precluding a reply by the Company.[4] The Union, by virtue of its representation of Nardis for many years, was aware of the wage scale existing there. Nevertheless, it chose to circulate the leaflet just two days prior to the election when the employees were leaving the plant for the day. The Company did not become aware of this action until the following day and was unable to ascertain the correctness of the representations until after the election.

Two additional relevant factors strongly demonstrate the need for a hearing—the closeness of the vote and the nature of the misrepresentation. If only three of the workers who voted for the Union would have voted against it except for the influence of the misleading statement, the election results would have been different. As we said in N.L.R.B. v. Gooch Packing Company, 5 Cir., 1972, 457 F.2d 361, 362:

> The closeness of the election is obviously relevant. Conduct which could have affected only a few voters may not have any effect on the ultimate outcome of the election in cases where the vote disparity is large, but the same conduct in a close election could be determinative.

The nature of the misrepresentation—wages—was, of course, of vital interest to the workers. "A statement as to wages goes to 'a very important and basic factor bearing on the attractiveness and efficiency of the Union as the employees' representative.'" Luminator Division of Gulton Industries, Inc. v. N.L.R.B., *supra,* 469 F.2d at 1374. What we observed on this subject in N.L.R.B.

v. Houston Chronicle Publishing Company, 5 Cir., 1962, 300 F.2d 273, 280, also bears repetition:

> Purportedly authoritative and truthful assertions concerning wages and pensions of the character of those made in this case are not mere prattle; they are the stuff of life for Unions and members, the selfsame subjects concerning which men organize and elect their representatives to bargain.

If an assertion bearing the semblance of truth and authority is in fact misleading, any resultant action which has been influenced by that assertion should be nullified. Whether or not that is the situation here, we have still to learn. Only a full hearing can enlighten the Board and this Court.

Enforcement of the Board order is denied and the case is remanded for a hearing in accordance with the views herein expressed.

Board rules proscribing captive audience meetings during the 24 hours immediately preceding an election.

---

**4.** Although the Regional Director did not reach this issue, the Board does not dispute the contention by the Company that it was prohibited from rebutting the misstatements because of