NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

B. D. HOLT COMPANY, Respondent.

No. 75–1296

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 25, 1975.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Elliott Moore, Deputy Assoc. Gen. Counsel, N. L. R. B., Washington, D. C., Louis V. Baldovin, Jr., Director, Region 23, N. L. R. B., Houston, Tex., for petitioner.

Michael C. Kendrick, Jr., Corpus Christi, Tex., for respondent.

Before COLEMAN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

This matter is before us on petition of the National Labor Relations Board to enforce its order that respondent, B. D. Holt Company, cease and desist from refusing to bargain collectively with Local 450 of the International Union of Operating Engineers, AFL–CIO [the Union], as the exclusive bargaining agent for the company's production and maintenance employees at the Company's facilities in Aransas Pass and Corpus Christi, Texas.

I. Factual Background

On January 9, 1974 a consent election was held by the Company's employees which the Union won by a vote of 47 to 29. Additionally, two ballots were void and five were challenged. During its campaign in late 1973 the Union told the Company's employees that, if the Union won the election, they would be in a branch local (Local 450B) rather than in Local 450 of the International Union of Operating Engineers. The international union's charter permits locals to create branch units, largely for the purpose of making distinctions in the amount of dues and fees to be paid by the employees. The Union's representatives explained that the dues in branch Local 450B would be substantially lower than the dues required in Local 450, because the members of Local 450 were operating engineers in the construction industry and their higher wage scale permitted payment of more fees.

On December 31, 1973, the Company sent a letter to the employees stating:

We all know that unions cannot operate without dues and initiation fees. In this connection we have determined that Local Union No. 450 requires payment of dues of $13.50 *per month* and an initiation fee of $159 from union members classified as "oilers", and dues of $15 *per month* and an initiation fee of $320 from union members classified as "equipment operators."

(emphasis in original). This information was repeated in a speech by company representatives on January 7, 1974. On January 8, 1974, the day before the election, the Union responded with a letter of its own, stating:

And in that same letter—the crowning insult! He [the company president] in

effect, tells you that you are like little children and that you must not listen to that bad old man down at the union hall. He tells you that bad old union man is going to make you join the union and pay him $320 and $15.00 a month dues. Well, I'm telling you and Mr. Holt [the company president] that he is a liar! and statements like that only show the extent to which he will go to scare you (like you were a little child) so that he can keep working you at starvation wages.

Those of you who attended our meetings know that I have already told you what your initiation fee and dues will be, but let us put it in writing so there will be no doubt. Your group will be under a branch charter known as local 450B.

| | |
|---|---|
| B Charter Initiation Fee | $15.00 |
| 2% tax to International | 3.00 |
| 3 mo. dues at $5.00 per month | 15.00 |
| | $33.00 |

with 3 mo. dues paid

On the day of the election, the Union also circulated among the Company's employees copies of the bylaws of Local 450, which concededly did not reflect recent revisions in the amounts of dues and fees.

In its objections to certification, the Company alleged three instances of misrepresentation: (1) the Union's declaration, in its letter to employees the day before the election, that the company president was a liar; (2) the Union's allegedly unfulfilled promise, in the same letter, that the employees would be part of a separately chartered branch local; and (3) the Union's distribution of inaccurate written material concerning dues. The Board's Regional Director investigated these objections and overruled them. On May 29, 1974, the Board certified the Union, adopting the Regional Director's findings and conclusions. The Company thereafter refused to bargain with the Union, precipitating this unfair labor practice proceeding. On December 5, 1974 the Board granted the General

Counsel's motion for summary judgment and entered a cease-and-desist order against the Company.

II. Whether the Union's Actions Require that the Election be Set Aside.

The principles of law governing misrepresentation questions are clear:

A four-prong test has been formulated by this Court for evaluating questionable campaign communications: (1) whether there has been a misrepresentation of a material fact; (2) whether the misrepresentation came from a party who was in an authoritative position to know the truth, or who had special knowledge of the facts; (3) whether the other party in the election had adequate opportunity to reply and to correct the misrepresentation; (4) whether the employees had independent knowledge of the misrepresented fact so that they could effectively evaluate the propaganda.

N. L. R. B. v. Mr. Fine, Inc., 5 Cir., 1975, 516 F.2d 60. *See, e. g.*, N. L. R. B. v. Carlton McLendon Furniture Co., Inc., 5 Cir., 1974, 488 F.2d 58, 62; N. L. R. B. v. Cactus Drilling Corporation, 5 Cir., 1972, 455 F.2d 871, 874. In this case we need not consider the second, third and fourth elements of the test because we conclude that the Union's statements were not misrepresentations of material facts.

In calling the Company president a liar the Union's letter accused him of an intentional misrepresentation in the Company's letter of December 31, 1973 concerning the amount of dues to be assessed. This accusation was a statement of opinion and nothing more. The Company's letter, although technically accurate, may very well have been designed to convince the employees that the dues paid by members of Local 450 would also be applicable to them, which concededly is not true. This was the conclusion drawn by the Union in its letter. The employees were free to evaluate that opinion and come to their own conclusions. A statement of opinion cannot be a misstatement of fact, unless it contains

the implication that the author of the statement is relying on unrevealed information. The Union's letter contained no such innuendo. Cf. Luminator Division of Gulfton Industries, Inc. v. N. L. R. B., 5 Cir., 1972, 469 F.2d 1371; N. L. R. B. v. Bill's Institutional Commissary Corp., 5 Cir., 1969, 418 F.2d 405. It merely expressed an opinion on the basis of facts (the contents of the Company's letter) fully available to the employees.

■ It is to be expected that representation battles will sometimes be waged by hyperbole.

> [I]n a number of cases, the Board has concluded that epithets such as 'scab,' 'unfair,' and 'liar' are commonplace in these struggles and not so indefensible as to remove them from the protection of § 7, even though the statements are erroneous and defame one of the parties to the dispute.

Linn v. United Plant Guard Wkrs. of Amer., Loc. 114, 383 U.S. 53, 60–61, 86 S.Ct. 657, 662, 15 L.Ed.2d 582 (1966).[1] The Union's accusation, although perhaps an overreaction, was not a misrepresentation of a material fact.[2]

■ The Company cites the Union's refusal to produce the charter of Local 450B at the post-election proceedings as evidence that the Union had deceived the employees in telling them that they would be part of a separately chartered branch local. We doubt that a mere allegation of misrepresentation, unsupported by any evidence, requires the Un-ion to come forward with proof that it fulfilled its promise of a branch local. N. L. R. B. v. Singleton Packing Corp., 5 Cir., 1969, 418 F.2d 275, 280. More importantly, there was no need for written documentation since the only significance of the branch local is to create a distinction in the amount of dues and fees paid. The fact that the Union used the word "charter" does not mean that a document must be drawn up or else its statement is false. The Company has offered no evidence that the Union ever gave the employees the impression that they would be represented in collective bargaining by an agent other than Local 450. Everyone clearly understood that the branch local was simply a device for levying lower fees and dues, and the Company does not contend that the dues and fees actually charged have been other than as represented.

■ The Company also contends that the Union misrepresented a material fact by circulating false information concerning fees and dues on the day of the election. The Union's representatives did circulate copies of Local 450's bylaws which contained figures for dues and fees that have since been revised upward. The bylaws distributed were the most recent printed edition, however, and the discrepancy was very minor. Moreover, since the Union clearly had told the employees that they would not be paying the same dues and fees as the members of Local 450, it is doubtful that they considered these figures in deciding how to vote.[3]

---

1. The Company argues that *Linn* is distinguishable because the question was whether liability for defamation would unduly interfere with the free conduct of a representation campaign. Overturning a representation election is an even more direct sanction. If, as the Court held in *Linn,* freewheeling exchanges cannot be inhibited by enforcement of libel laws, *a fortiori* they cannot be punished by overturning an election either.

2. The Board's determinations concerning misrepresentation are entitled to great weight. N. L. R. B. v. Muskogee Lumber Co., Inc., 5 Cir., 1973, 473 F.2d 1364, 1366. We find no abuse of discretion.

3. The Company alternatively contends that the Board should have granted a hearing on its allegations. There was no dispute, however, as to the material facts. The communications in question were all in writing, and the circumstances of their circulation are undisputed. The Company has offered no prima facie evidence of a violation that would warrant setting the election aside, because the only statements alleged to be misrepresentations of material facts are, as a matter of law, not representations of fact. *See* Luminator Division of Gulfton Industries, Inc. v. N. L. R. B., supra, 469 F.2d at 1374; N. L. R. B. v. Bill's Institutional Commissary Corp., supra, 418 F.2d at 406; N.

Having considered each of the Company's contentions carefully, we conclude that they are without merit. The Board's petition for enforcement is granted.

Enforcement granted.

L. R. B. v. Smith Industries, Inc., 5 Cir., 1968, 403 F.2d 889, 892. In light of the unambiguous factual setting of the alleged misrepresentations and the substantial margin by which the Union won, see N. L. R. B. v. Gooch Packing Company, 5 Cir., 1972, 457 F.2d 361, 362, we conclude that the Board did not err in denying a hearing on the Company's allegations.