[S. F. No. 24942. May 29, 1986.]

ROBERT J. LINDELEAF, Petitioner, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

COUNSEL

Stanley E. Tobin, James G. Johnson and Hill, Farrer & Burrill for Petitioner.

Daniel G. Stone, Manuel M. Medeiros, Nancy C. Smith and Ismael A. Castro for Respondent.

Dianna Lyons, Daniel A. Garcia and Wendy Sones for Real Party in Interest.

OPINION

**MOSK, J.**—This case presents a fundamental challenge to the procedure used by the Agricultural Labor Relations Board (ALRB or Board) to select hearing officers and render decisions on postelection objections in union representation elections. It also calls into question the threshold requirements for compelling the ALRB to grant an evidentiary hearing on such objections.

We conclude that ALRB regulations for selecting investigative hearing examiners (IHEs) and delegating to them the initial task of conducting hearings and issuing recommended findings to the Board do not conflict with either the language or the policy of the Labor Code. At the same time, we reaffirm the principle announced in *J.R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1 [160 Cal.Rptr. 710, 603 P.2d 1306], that to be entitled to administrative review by the Board complainants must present a prima facie case that specific misconduct tainted the election. Therefore we reverse the Court of Appeal's judgment annulling the ALRB decision certifying the United Farm Workers (UFW) as the exclusive bargaining representative for employees of Robert J. Lindeleaf (Lindeleaf). (*Robert J. Lindeleaf* (1982) 8 ALRB No. 22.) Furthermore, because each of Lindeleaf's specific allegations of misconduct appears to be without merit, and its prolonged litigation of its election objections unreasonable, its refusal to bargain in good faith with the UFW warrants our affirmance of the make-whole order imposed against Lindeleaf by the ALRB. (*Robert J. Lindeleaf* (1983) 9 ALRB No. 35.)

On August 29, 1980, the UFW filed a petition with the ALRB, seeking certification as the exclusive bargaining representative for the agricultural employees of Lindeleaf. An election was held September 4, 1980, and the UFW emerged the clear winner. The tally of votes was: UFW—71; no union—35; void—1; challenged ballots—4.

Pursuant to Labor Code section 1156.3, subdivision (c),[1] Lindeleaf filed 11 objections that allegedly warranted setting the election aside. After review, the ALRB executive secretary summarily dismissed certain of these

---

[1] All statutory references hereinafter are to the Labor Code, unless otherwise indicated.

objections in their entirety and others in part. Lindeleaf filed a request for review, and the ALRB set four issues for hearing.

The hearing was conducted by an IHE, who determined that the objections were uniformly unmeritorious: the claimed violations were found to be either unsubstantiated or de minimis, and did not affect the outcome of the election. The ALRB "affirm[ed] the IHE's rulings, findings and conclusions," and adopted her recommendation that the UFW be certified. (*Robert J. Lindeleaf* (1982) 8 ALRB No. 22, at p. 3.)

Insisting that certification was improper, Lindeleaf refused to bargain with the UFW, and the union filed charges of unfair labor practices with the ALRB pursuant to section 1153, subdivisions (a) and (e). On stipulated facts, the ALRB found Lindeleaf's refusal to bargain constituted an unfair labor practice; it ordered the parties to bargain in good faith and imposed a make-whole sanction on Lindeleaf, requiring it to reimburse present and former employees who suffered pay and other economic losses as a consequence of its refusal to bargain. (*Robert J. Lindeleaf* (1983) 9 ALRB No. 35.)

Lindeleaf petitioned for review in the Court of Appeal, urging it to set aside the ALRB decision and make-whole order. It contended that the ALRB abused its discretion in summarily dismissing certain of its postelection objections and in overruling others after the investigative hearing. In a supplemental brief, raising the issue for the first time, Lindeleaf challenged the ALRB's delegation of authority to an IHE to issue findings and a recommended decision, as contravening an express mandate of the Agricultural Labor Relations Act (ALRA). The Court of Appeal annulled the decision, concluding that the Board improperly delegated its quasi-judicial function by adopting the IHE's recommendation and that three of Lindeleaf's objections summarily rejected by the Board required a full hearing. It remanded to the ALRB for reconsideration without reference to the findings, conclusions, and recommendations of the IHE.

I

■ At the outset, we must determine whether the present challenge to ALRB hearing procedures is properly before this court. Lindeleaf concedes that it failed to exhaust its administrative remedies by raising this contention before the ALRB. (See Lab. Code, § 1160.8.) ■ It is true that courts ordinarily accord administrative agencies the initial opportunity to address claims involving interpretation of their own regulations (*Highland Ranch* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 848, 859 [176 Cal.Rptr. 753, 633 P.2d 949]), and a petitioner is deemed to waive any objections

that could have been raised before the ALRB. (*Carian* v. *Agricultural Labor Relations Bd.* (1984) 36 Cal.3d 654, 685, fn. 6 [205 Cal.Rptr. 657, 685 P.2d 701]; *Nish Noroian Farms* v. *Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 737 [201 Cal.Rptr. 1, 677 P.2d 1170].)

■ Lindeleaf maintains that its failure to contest ALRB regulations is excusable under the unusual circumstances of this case: while its petition was pending in the Court of Appeal, the same court raised that very issue sua sponte in another case and held that ALRB hearing procedures contravene the express mandate of the Labor Code. (*A & D Christopher Ranch* v. *Agricultural Labor Relations Bd.*, Civ. No. A020605, an opinion subsequently ordered not to be published.) Prior to that decision, Lindeleaf argues, it would have been futile to raise such an objection before the Board.

Although these circumstances certainly account for Lindeleaf's tardy challenge, they may not excuse it as arising from the "exceptional circumstance" of a change in the law. Lindeleaf's reliance on *N.L.R.B.* v. *Robin American Corp.* (5th Cir. 1982) 667 F.2d 1170, is misplaced. In that case, the court permitted the plaintiff to raise a tardy objection to a National Labor Relations Board (NLRB) remedy for refusal to bargain after the United States Supreme Court decided a case changing the law on what constitutes a mandatory subject of bargaining. Here, by contrast, once we ordered *Christopher* depublished, it could not be cited as authority and Lindeleaf could no longer claim an effective modification of the law.

Moreover, although it had apparently never occurred to any litigants, including Lindeleaf, to contest the validity of the ALRB regulations in question until the short-lived holding in *Christopher*, it would not have been futile or frivolous to do so. ■ The futility exception to the requirement that parties exhaust their administrative remedies demands that the petitioner state with assurance that the Board would rule adversely in its own particular case. (*Gantner & Mattern Co.* v. *California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932]; *Doyle* v. *Chino* (1981) 117 Cal.App.3d 673, 683 [172 Cal.Rptr. 844].) ■ Because the issue had never been presented to the ALRB, its probable decision could not be forecast. To permit Lindeleaf retroactively to second-guess the Board would improperly dilute the Board's power to "make, amend, and rescind" its own regulations. (§ 1144.)

Nevertheless, we elect to address this challenge on its merits. Our refusal to do so would affect not only the present parties, but also the parties to every nonfinal decision of the ALRB on election challenges that involved hearings and recommendations by an IHE. Although waiver is the general rule when parties fail to exhaust their administrative remedies, we may

agree to hear a case involving important questions of public policy. (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d 512], and cases cited.)

## II

■ Lindeleaf contends that the ALRB regulations concerning the selection and duties of the IHEs contravene the language and intent of the ALRA. It submits that the Board's statutory mandate established it as a quasi-judicial body that must reach its own decisions, and that by appointing IHEs to arrive at findings of fact and recommend decisions, the Board improperly delegates its discretion to mere "functionaries."

Lindeleaf relies on the provision of the ALRA that election hearings "may be conducted by an officer or employee of a regional office of the Board. He shall make no recommendations with respect thereto." (§ 1156.3, subd. (c).) The Board has interpreted this section to require that only a hearing examiner who is an officer or employee of a regional office is barred from recommending disposition of election challenges; to expedite its review procedures, it has ruled that no such officers or employees may conduct hearings (Cal. Admin. Code, tit. 8, § 20370, subd. (a)) and that IHEs "shall issue an initial decision including findings of fact, conclusions of law . . . and a recommended disposition of the case." (*Id.,* subd. (f).) Lindeleaf maintains that these regulations both prohibit what the ALRA permits—hearings conducted by officers or employees of ALRB regional offices—and require what the statute forbids—findings and recommendations by IHEs. We disagree.

■ Our review of administrative regulations is in any case limited: as long as the regulations are "reasonably necessary to effectuate the purpose of the statute" (Gov. Code, § 11342.2), we will defer to the agency's expertise. Our inquiry is thus "freighted with the strong presumption of regularity accorded administrative rules and regulations." (*Ralphs Grocery Co. v. Reimel* (1968) 69 Cal.2d 172, 175 [70 Cal.Rptr. 407, 444 P.2d 79]; accord, *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 411 [128 Cal.Rptr. 183, 546 P.2d 687].) ■ Lindeleaf's contentions would fail to prevail, however, even under a more liberal standard of review.

First, although the statute provides that the Board "upon due notice, shall conduct a hearing to determine whether [a disputed] election shall be certified" (§ 1156.3, subd. (c)), it does not follow that the Board itself must make initial findings of fact and conclusions of law. The code specifically

empowers the Board to appoint hearing officers,[2] whose function would be rendered nugatory by a requirement that they may not arrive at any preliminary determinations. Such a rule would strain the resources of the Board in a manner not contemplated by the Legislature.

Second, the fact that hearings "*may* be conducted by an officer or employee of a regional office of the Board" (*ibid.*) does not require they *must* be so conducted in any individual case. Consequently, the Board's regulation prohibiting such officers or employees of regional offices from making recommendations, while purposefully narrower than the statute, is clearly permissible.

Third, Lindeleaf's reading of section 1156.3, subdivision (c), is untenable. The statute provides, "Such hearings may be conducted by *an officer or employee of a regional office of the Board. He* shall make no recommendation with respect thereto." (Italics added.) Lindeleaf proposes that the phrase "of a regional office of the Board" qualifies only the word "employee" and not the word "officer"; that the latter word refers generally to any hearing officer, including IHEs who are not employees of a regional office; therefore, *any* person conducting a hearing is assertedly barred from making recommendations to the Board. This reading defies both grammar and sense: the pronoun "He" must refer to the entire immediately preceding sentence, and the terms "an officer or employee" must be read together, both being qualified by the phrase, "of a regional office of the Board."

Moreover, the regulations in question serve the policy of the statute. ■ Because local elections are conducted under the supervision of regional directors and overseen by regional agents whose duties include maintaining "quarantined" areas, challenging prospective voters, and tallying ballots (Cal. Admin. Code, tit. 8, § 20350 et seq.), the Legislature designed section 1156.3, subdivision (c), to avoid any appearance of impropriety that might arise if hearings on election objections were conducted by employees of the same regional offices. ■ By providing that no regional employee or officer may serve as an IHE, the regulations preclude a situation in which such employees would review the conduct of their own colleagues during local elections. At the same time, because the Board appoints independent IHEs, not affiliated with any regional staffs (Cal. Admin. Code, tit. 8, § 20370, subd. (a)), it expedites its investigative proceedings by requiring

---

[2]Pursuant to section 1142, subdivision (b), the ALRB may authorize personnel of Board regional offices "as it deems appropriate . . . to investigate and provide for hearings . . . and to certify the results of [representation] election[s], and to investigate, conduct hearings and make determinations relating to unfair labor practices." It may generally appoint "hearing officers, administrative law officers, and other employees as it may from time to time find necessary for the proper performance of its duties." (§ 1145.)

that IHEs recommend initial dispositions. This procedure does not impinge on legislative intent: the ALRB has reasonably deduced that the statute does not prohibit a hearing officer who is neither an officer of, nor an employee of, a regional office from making recommendations, because no conflict could arise in that event.

Fourth, the ALRB provision for de novo review of contested recommendations by IHEs ensures that the Board does not delegate its ultimate authority in election matters. Pursuant to its regulations, any party may file exceptions to initial IHE findings and recommendations, triggering independent review by the Board of the entire proceedings. (Cal. Admin. Code, tit. 8, § 20370, subd. (g); see *Andrews* v. *Agricultural Labor Relations Bd.* (1981) 28 Cal.3d 781, 794 [171 Cal.Rptr. 590, 623 P.2d 151].) The Board undertook such de novo review in the present case before adopting the IHE's recommendations.

Finally, defendants point out that the ALRA language is modeled on the NLRA provision that a hearing to determine whether a question of representation exists "may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. . . ." (29 U.S.C. § 159(c)(1).) This provision was added in 1947 under the Taft-Hartley Act; previously, the NLRB regional office personnel regularly sat as hearing officers in representation cases and made comprehensive reports and recommendations to the Board. (See Sen. Minority Rep. No. 105, 80th Cong., 1st Sess., p. 25 (1947).) To support their interpretation of section 1156.3, defendants refer to the legislative history of the National Labor Relations Act (NLRA) amendment, which suggests that it was enacted in order to avoid any impropriety arising from a practice of having regional employees rule on questions involving actions of their own colleagues, by isolating Board members from the Board agents who conduct representation investigations. (*Id.* at p. 33.)

The analogy defendants draw is imperfect, however, because although the ALRA language is clearly derived from the NLRA, the NLRA provision is for pre-election hearings on questions of representation—i.e., determinations as to the appropriate bargaining unit—to which there is no comparable ALRA procedure. Indeed, NLRB postelection hearings involving election misconduct of the kind at issue in the present case are conducted only after a regional director declines to exercise his own authority to decide the case, subject to Board review. (29 C.F.R. § 102.69, subd. (c)(3).) If the regional director requires a hearing, "the hearing officer shall, if directed . . . prepare and cause to be served on the parties a report resolving questions of credibility and containing findings of fact and recommendations as to the

disposition of the issues." (*Id.*, subd. (e).) The regional director then acts on the basis of those findings. (*Id.*, subd. (d).)

Thus, deference to the Board's interpretation of the ALRA, basic principles of statutory construction, and clear legislative policy weigh in favor of sustaining the Board's authority in present and similar cases to adopt the recommendations of IHEs who are delegated the initial task of reviewing objections to representation elections. We conclude that the regulations at issue are valid.

### III

Lindeleaf next contends the Board abused its discretion in summarily dismissing three of its objections concerning alleged UFW preelection misconduct. ▮ It argues that the evidentiary standard required for a hearing before the ALRB is "relatively easy to meet," and that it complied by alleging violations supported by evidence that was not simply "'nebulous and declamatory assertions, wholly unspecified,' nor equivocal hearsay." (*Luminator Division of Gulton Industries, Inc.* v. *N.L.R.B.* (5th Cir. 1972) 469 F.2d 1371, 1374.) ▮▮▮▮ Lindeleaf misstates the proper threshold for review by the Board, which is plainly expressed in its regulations: "[a petition for hearing must be] accompanied by a declaration or declarations which, if uncontroverted or unexplained, would constitute sufficient grounds for the Board to refuse to certify election." (Cal. Admin. Code, tit. 8, § 20365.)[3]

In *J.R. Norton Co.* v. *Agricultural Labor Relations Bd.*, *supra*, 26 Cal.3d 1, 14, we upheld the ALRB requirement that a petitioner present a prima facie case before it can command an evidentiary hearing. We noted that although the Labor Code itself does not explicitly condition a hearing on the presentation of adequate supporting declarations, the ALRB may exercise its statutory authority to adopt "such rules and regulations as may be necessary to carry out the provisions of [the ALRA]." (§ 1144.) We held that the regulation permitting summary dismissal of inadequate challenges to election certifications is a reasonable exercise of such authority by the

---

[3]Indeed, in its discussion, Lindeleaf equally misstates the analogous NLRA standard. The NLRB regulation provides that objections to election misconduct shall be submitted to a regional director who, like the ALRB executive secretary, reviews and acts on them in the first instance. (29 C.F.R. § 102.69(a)-(c).) The regional director will issue a notice of hearing only when he determines that "substantial and material factual issues" are raised. (*Id.*, subd. (d).) The party objecting must, as under the ALRA, supply "prima facie evidence, presenting 'substantial and material factual issues' which would warrant setting aside the election." (*Alson Mfg. Aero. Div. of Alson Indus., Inc.* v. *N.L.R.B.* (9th Cir. 1975) 523 F.2d 470, 472; see also *N.L.R.B.* v. *Bata Shoe Company* (4th Cir. 1967) 377 F.2d 821, 826.)

Board, serving the valid purpose of assuring that the ALRB "will not dissipate its limited resources in holding meaningless hearings on claims that are, as a matter of law, insufficient." (*J.R. Norton Co.* v. *Agricultural Labor Relations Bd., supra,* at p. 18.)

Under that standard, as appears below, we conclude the ALRB properly determined that Lindeleaf's objections concerning union electioneering around the polling place, threats to workers of job loss if they voted against the union, and the rejection of one of Lindeleaf's candidates for election observer, were not supported by factual declarations amounting to a preliminary showing that the election must be set aside. The Board correctly dismissed those objections.

### A.

■ Lindeleaf alleges UFW organizers exhorted voters to select the union as their bargaining representative and distributed pro-UFW flyers immediately before and during balloting. It has, however, failed to support the claim with evidence amounting to a prima facie showing. The ALRB has firmly held that last-minute electioneering in the polling place does not warrant setting aside an election unless it continues during actual voting or is intimidating and coercive to employees. (*O.P. Murphy & Sons* (1977) 3 ALRB No. 26, at p. 7; *United Celery Growers* (1976) 2 ALRB No. 27, at p. 5; see *Glacier Packing Co., Inc.* (1974) 210 NLRB 571, 573, fn. 5.)

Only a single declaration submitted by Lindeleaf even arguably complains of campaigning by the union once balloting commenced, and the declarant is vague about when and where the alleged electioneering occurred: the declarant refers to UFW observers "constantly talking to the voters" and claims she had to "keep asking the ALRB representatives to keep [UFW] people away from the voting area," but she does not explicitly state that the activity persisted during the actual voting. Moreover, neither that declarant nor any other person complained of UFW intimidation at the polls or asserted that voters were coerced by pro-union electioneering.

### B.

■ The declarations Lindeleaf submitted regarding alleged threats by UFW organizers against employees similarly fail to provide a prima facie evidentiary basis for a charge of preelection misconduct. The alleged threats involved in this objection all occurred *after* the election. Lindeleaf makes no showing of how this subsequent misconduct affected the outcome of the election previously held. Moreover, as appears below, the Board conducted

a full evidentiary hearing on Lindeleaf's objection that UFW threatened workers before the election; as the Board properly dismissed that charge, it would be futile to remand the present objection to the Board for hearing.

## C.

Lindeleaf next complains that the Board summarily dismissed its objection concerning the rejection of Carlos Acevedo as its election observer. Again, the Board properly dismissed this objection after determining that Lindeleaf had failed to make a preliminary showing that the rejection amounted to a violation by the ALRB representative.

First, Acevedo was not an employee of Lindeleaf at the time of the election, so his participation as an observer depended on written agreement by all parties to the election. (Cal. Admin. Code, tit. 8, § 20350, subd. (b).) The UFW was entitled to withhold its approval. Second, Lindeleaf itself concedes that the rejection "is legally insufficient to require that an election be set aside," acknowledging that the declarations it submitted do not show that it was prejudiced by the rejection or that Acevedo's absence as an observer affected the election results. (See *Missakian Vineyards* (1977) 3 ALRB No. 3, at p. 3.) It proposes merely that the rejection may be seen as objectionable in the context of the myriad other violations it charges. Because we conclude that each of Lindeleaf's objections was properly dismissed, the point is untenable.

## IV

Lindeleaf further maintains that the ALRB abused its discretion in overruling election objections that were referred to investigative hearing. It insists that in adopting the IHE's recommendations the Board either disregarded competent evidence or incorrectly determined that the conduct in question did not affect the outcome of the election. We disagree. None of its objections is remotely meritorious.[4]

## A.

Lindeleaf charges the UFW waged a systematic campaign of threats to workers that they would lose their jobs after a union victory if they failed to sign authorization cards and vote for the union. This intimidation, Lindeleaf avers, generated an atmosphere of fear precluding the free

---

[4]The Court of Appeal did not address the remaining issues. Lindeleaf, however, raised them in timely fashion in its answer to the petition for review. (Cal. Rules of Court, rule 28(e)(5).) In the interest of judicial economy, we discuss them briefly.

election of a collective bargaining representative by its employees. (13) Lindeleaf correctly paraphrases the rule that an election must be set aside if employees were coerced into voting for the union. (*Professional Research Inc.* (1975) 218 NLRB No. 16 [89 LRRM 1273]; *Mike Yurosek & Sons* (1976) 225 NLRB No. 20 [92 LRRM 1535]; *Takara International, Inc.* (1977) 3 ALRB No. 24, at pp. 3-4.) ▬▬ As the ALRB concluded, however, Lindeleaf failed to produce competent evidence to support its allegations.

Witnesses for Lindeleaf testified they overheard unidentified persons describe threats made by unidentified union representatives. Their statements do not adequately demonstrate that the alleged threats were made by organizers or agents of the union; concerns of potential job loss by fellow employees would be insufficient grounds for setting aside the election. (*Patterson Farms, Inc.* (1976) 2 ALRB No. 59, at p. 8; *San Diego Nursery Co., Inc.* (1979) 5 ALRB No. 43, at p. 15.) Even if the witnesses clearly identified the individuals who allegedly threatened workers as UFW agents, however, the proferred evidence would be inadmissible hearsay: as the IHE ruled, the testimony would be admissible to show the state of mind of the unnamed employees, but not to prove that UFW representatives actually threatened workers. The Board's regulations clearly provide that although hearsay evidence may be used at investigative hearings to supplement or explain other evidence, it may not in itself support a finding by the Board unless it would be admissible in a civil action. (Cal. Admin. Code, tit. 8, § 20370, subd. (c).) We conclude, therefore, that the ALRB properly dismissed this objection.

## B.

▬▬ Lindeleaf objects that the election must in any case be set aside because the ALRB agent failed to respond promptly to misconduct by a UFW organizer in the "quarantined" area as the election was about to begin. Again, the ALRB correctly determined that Lindeleaf offered inadequate evidence to support its assertion.

The disputed incident occurred moments before balloting commenced, when a UFW organizer drove over to a tomato harvester within sight of the polling area, in an apparent attempt to recruit a last-minute replacement for an absent union observer. When Lindeleaf pointed out that the harvester stood in an area designated off-limits, a Board agent promptly pursued the UFW organizer, requested that he leave the area, and proceeded to select an observer himself from the Lindeleaf crew.

Lindeleaf protests that the Board agent acted without enthusiasm, taking the long route around the harvester to approach the UFW organizer. Be-

cause of this, Lindeleaf maintains, the organizer was able to speak to the crew in Spanish for three or four minutes before descending from the harvester. Because Lindeleaf's witness did not understand Spanish, however, he could not testify that the UFW organizer exploited his momentary opportunity by engaging in prohibited electioneering. Furthermore, we find untenable Lindeleaf's position that the ALRB agent's choice of a circuitous path around the tomato harvester may be cast as an abuse of discretion requiring that we set aside the election. Indeed the incident was trivial at best.

## C.

■ Lindeleaf next argues that the election must be set aside because the ALRB failed to seek proper voter identification at the polls and refused to note challenges individually. Once again, its objection was properly dismissed as unmeritorious.

Lindeleaf's election observer testified that he made "about ten" challenges during the morning balloting against persons who had only their union cards or handwritten stubs torn from authorization cards as identification. He stated that in some cases, however, he challenged such voters even though he recognized them as Lindeleaf workers. In each instance, the challenged voter was permitted to cast a ballot after being recognized and identified by a UFW observer. Lindeleaf insists that "Section 2030 [*sic*] of the ALRB's regulations do not permit a Board agent to determine the adequacy of voter identification by simply asking the union's observer if he/she recognizes the prospective voter."

Lindeleaf has apparently overlooked the unequivocal provision in the regulations that identification may be in the form of "any . . . identification which the Board agent, in his or her discretion, deems adequate." (Cal. Admin. Code, tit. 8, § 20355, subd. (c).) The Board has expressly held that recognition of an employee "may, at the discretion of a board agent, constitute adequate identification." (*Toste Farms, Inc.* (1975) 1 ALRB No. 16, at p. 3.) Lindeleaf offers no evidence suggesting the ALRB agent abused his discretion in any particular instance: each challenged voter was identified by one of the election observers, on several occasions by Lindeleaf's own.

On the other hand, Lindeleaf legitimately complains that the ALRB agent improperly failed to note each challenge on the appropriate form: the form for "Challenges Refused" lists only four individuals; other challenges were summarily listed under the general category of identification challenges. Indeed, the Board itself expressed concern at the irregular record-keeping,

observing that under its rule, such ballots must be deemed void. *(George Lucas & Sons* (1977) 3 ALRB No. 5, at p. 3.) Lindeleaf's own testimony, however, indicates that only about 10 challenges were involved, a number insufficient to have altered the outcome of the election. Consequently, the ALRB properly dismissed the objection as immaterial. (Cal. Admin. Code, tit. 8, § 20363 subd. (c); *R.T. Englund* (1976) 2 ALRB No. 23, at p. 10; *TMY Farms* (1976) 2 ALRB No. 58, at p. 3.)

### D.

The final objection set for hearing concerned alleged violations of the Board's "access" regulations. (Cal. Admin. Code, tit. 8, § 20900.)[5] Lindeleaf alleged that UFW organizers repeatedly, and often in impermissibly large numbers, entered company property to campaign for the union. Employer witnesses testified they were forced to confront organizers and demand they leave; in each case, the UFW representatives complied promptly.

The ALRB found that aside from a few technical transgressions—e.g., having one or two organizers in excess of the permissible number—the UFW acted within the rules. More important, as Lindeleaf concedes, the violations charged would not in themselves constitute sufficient misconduct to set the election aside: only when access violations have deprived voters of their exercise of free choice does the Board consider invalidating an election. *(K.K. Ito* (1976) 2 ALRB No. 51, at p. 7; *Dessert Seed* (1976) 2 ALRB No. 53, at pp. 7-8.)

Lindeleaf urges us to overrule ALRB precedent and adopt a per se rule requiring an election be set aside whenever access violations have occurred. We decline to do so. The present case is an example of why such a rule would be inappropriate. Although we disapprove of the UFW failure to adhere strictly to the access rules, its violations in the present case were de minimis, in no way impairing the fairness of the election. Under these circumstances it would be inequitable to deprive employees, who participated

---

[5]The ALRB access rule provides that "organizers may enter the employer's property for a single period not to exceed one hour during the working day for the purpose of meeting and talking with employees during their lunch period. . . . If there is an established lunch break, the one-hour period shall include such lunch break. If there is no established lunch break, the one-hour period may be at any time during the working day." (Cal. Admin. Code, tit. 8, § 20900, subd. (e)(3)(B).) Such access is limited also to "two organizers for each work crew on the property, provided that if there are more than 30 workers in a crew, there may be one additional organizer for every 15 additional workers." *(Id.,* subd. (e)(4)(A).) On two occasions Lindeleaf representatives asked organizers to leave because it was not a lunch break, and on three occasions the UFW sent one or two more representatives than the regulations permit to meet with workers during scheduled breaks.

in a free and fair election, of their right to bargain collectively through their chosen representative. Moreover, the ALRB has expressly declined to adopt a per se rule (*ibid.*), and we will not dispute its administrative judgment that charges of access violations should be reviewed in each instance on their own facts.

V

■ Finally, Lindeleaf challenges the Board's imposition of a make-whole remedy. In *J.R. Norton* we emphasized that make-whole relief is not automatically available whenever the Board finds that an employer has failed to present a prima facie case in support of its objections; any other view would inhibit challenges in close cases raising important questions of fact or law concerning the fairness of an election. (*J.R. Norton Co.* v. *Agricultural Labor Relations Bd., supra,* 26 Cal.3d 1, 39.) On the other hand, make-whole relief is appropriate when an employer unreasonably refuses to accept the results of a free and fair election, in effect using litigation as a pretense to thwart the collective bargaining process.

In the present case, the Board, cognizant of the distinction we drew in *J.R. Norton* between frivolous claims and objections raising important issues regarding fairness, concluded that Lindeleaf's refusal to bargain with the certified representative of its agricultural workers was not in good faith. Finding the employer pursued judicial review of alleged misconduct that was either unsubstantiated or did not affect the outcome of the election, the ALRB imposed a make-whole order on Lindeleaf, which must reimburse its present and former agricultural employees for all pay and other economic losses they suffered as a result of its refusal to bargain. (*Robert J. Lindeleaf* (1983) 9 ALRB No. 35, at p. 8.) The Board specifically held that Lindeleaf did not have the reasonable litigation posture we required in *J.R. Norton,* at the time it refused to meet and confer with the UFW.[6]

We conclude that the Board's decision to impose a make-whole remedy is appropriate on this record.[7] As the Board observed: "Neither the objections which were dismissed by the Executive Secretary nor those which

---

[6]We decline Lindeleaf's last-minute request to take judicial notice of a stipulation of facts by the parties in November 1984 concerning Lindeleaf's termination of its agricultural operations during the 1983 season without prior notice to the UFW. Lindeleaf fails to explain how the stipulation is material to the issues, which concern ALRB decisions antedating it.

[7]Although we do not conclude that Lindeleaf's challenge to the ALRB regulations concerning the use of IHEs (Part II, *ante*) was unreasonable, that claim was not mentioned in the ALRB proceedings or raised in its petition for writ of review in the Court of Appeal. It emerged as a "Citation to Supplemental Relevant Authority," filed in December 1984, more than a year after the original petition was filed. It is therefore irrelevant to our determination whether the ALRB's make-whole sanction is appropriate in this case.

were the subject of a hearing raised novel questions of statutory interpretation or difficult legal issues. This is not a close case 'rais[ing] important issue[s] concerning whether the election was conducted in a manner that truly protected employees' right of free choice.' (*J.R. Norton v. Agricultural Labor Relations Bd., supra,* 26 Cal.3d 1, 39.)" The UFW prevailed in the election by a sizable margin, and Lindeleaf's evidentiary objections to the Board's rulings were neither substantial nor of a nature that was likely to have affected the outcome of the election.[8] Lindeleaf workers have endured a prolonged delay—more than five years—because of the protracted proceedings, and under the circumstances we find no abuse in the Board's exercise of discretion to award the employees compensation for their consequent economic loss.

For the foregoing reasons the judgment of the Court of Appeal is reversed.

Broussard, Acting C. J., Reynoso, J., and Grodin, J., concurred.

**PANELLI, J.**—I respectfully dissent.

The majority upholds the imposition of the make-whole remedy based on the board's conclusion that Lindeleaf's refusal to bargain was not in good faith and, specifically, that Lindeleaf did not have a reasonable litigation posture at the time it refused to bargain. By the time the matter reached this court, however, the board had been proved wrong. A majority on the panel of the Court of Appeal which heard Lindeleaf's complaints agreed with the grower and annulled the ALRB certification of the union as the exclusive bargaining representative.

Although this court may disagree with the Court of Appeal, as we have in this case, on the merits of the questions presented for review, I do not believe we can any longer rely on Lindeleaf's "litigation posture"—the board's assessment of Lindeleaf's prospects for success in the judicial forum—as the basis for imposing the drastic remedy of make-whole. As the matter now stands, it is incongruous to say that Lindeleaf pursued judicial relief in bad faith—that it sought review of "frivolous" election challenges as a dilatory tactic, for the purpose of delay.

---

[8]At oral argument, Lindeleaf raised the novel theory that make-whole relief is inappropriate after a lone dissenting hearing officer, Board member, or appellate judge finds merit in an employer's claim of election misconduct. Lindeleaf offers no authority for its position, which would potentially eliminate any disincentive for employers to pursue dilatory appeals by too easily immunizing them against make-whole demands. We reaffirm the standard we established in *J.R. Norton,* which looks to the substantiality of the objections raised and the good faith of the employer seeking judicial review of union certification.

Absent any other justification in the record, the grant of make-whole relief is inappropriate.

Lucas, J., and Low (Harry W.), J.,* concurred.

*Presiding Justice, Court of Appeal, First District, Division Five, assigned by the Acting Chairperson of the Judicial Council.