[L.A. No. 31237. Jan. 29, 1981.]

ROBERT S. ANDREWS et al., Petitioners, v.
AGRICULTURAL LABOR RELATIONS BOARD, Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Real Party in Interest.

**COUNSEL**

Cohen, Freeman & Broker, Clark Brown, Paul S. Aronzon, Haight, Dickson, Brown, Bonesteel & Rigg and Roy G. Weatherup for Petitioners.

Dressler, Stoll, Hersh & Quesenbery, Sarah W. Wolfe, Ronald A. Zumbrun and Robert K. Best as Amici Curiae on behalf of Petitioners.

Ellen Lake, Manuel M. Medeiros, Deborah Warren, Ruth Rokeach, Daniel G. Stone, Harry J. Delizonna, Dennis M. Sullivan, Marvin J. Brenner and Thomas M. Sobel for Respondent.

Fred Okrand and Gary Williams as Amici Curiae on behalf of Respondent.

Dianna Lyons, Marco E. Lopez, Carlos M. Alcala, Francis E. Fernandez, Carmen S. Flores, Daniel A. Garcia, Federico G. Chavez,

Ellen J. Eggers, Jerome Cohen, Sanford N. Nathan, W. Daniel Boone, Glenn Rothner, E. Michael Heumann II, Tom Dalzell, Linton Joaquin, Deborah Peyton and Kirsten L. Zerger for Real Party in Interest.

Timothy H. McCarthy, Albert H. Meyerhoff, Richard M. Pearl, Valeriano Saucedo, Fred H. Altshuler, Altshuler & Berzon, Vilma S. Martinez, Morris J. Baller, Joel G. Contreras, Ronald T. Vera, John H. Erickson, Alice M. Beasley, Henry Hewitt, Erickson, Beasley & Hewitt, Lois Salisbury, Mark N. Aaronson, Anthony G. Amsterdam, Jerome B. Falk, Jr., Ephraim Margolin, Miguel A. Mendez, Charles J. Meyers, Gary J. Near and E. Robert Wallach as Amici Curiae on behalf of Respondent and Real Party in Interest.

## OPINION

MOSK, J.—Pursuant to Labor Code section 1160.8, petitioners seek a writ of review to set aside a decision and order of the Agricultural Labor Relations Board (Board). Because we granted petitioners' petition to explicate the grounds upon which a finding of bias sufficient to compel disqualification may be based, we will recite only those facts relevant to the contention that the administrative law officer (ALO) erred when he failed to disqualify himself.

The Board's general counsel initiated the underlying proceeding by filing complaints pursuant to Labor Code section 1160.2 alleging that petitioners—agricultural employers of workers covered by the Agricultural Labor Relations Act (ALRA)—had committed various unfair labor practices in connection with a union representation election held among petitioners' employees. The general counsel charged petitioners with unlawfully discharging and demoting nine of their employees, with engaging in unlawful surveillance and interrogation of employees, and with otherwise restraining and interfering with the employees' rights under the ALRA. The general counsel's complaint and objections to the election filed by the United Farm Workers of America, AFL-CIO (UFW), which lost the election to the Teamsters Union, were consolidated for evidentiary hearing before an ALO.

The Board appointed Armando Menocal as a temporary ALO, pursuant to Labor Code section 1145, to conduct the hearings which took

place in December 1975 and January 1976. At that time, Menocal was an attorney in private practice with Public Advocates, Inc., a public interest law firm in San Francisco. Petitioners' counsel first learned of this fact approximately one hour before the hearing commenced. He immediately moved to disqualify Menocal under California Administrative Code, title 8, section 20230.4, the then current regulation on disqualification of ALOs. After denying counsel's request to question him about his employment, the ALO permitted counsel to make an oral affidavit as follows:

"Mr. Brown: My affidavit would be this that I understand Mr. Menocal is employed by Public Advocates which is a firm that I understand does a good deal of work in the area of employment discrimination. I believe they also do work on behalf of labor unions. It is my understanding that they do not work on behalf of employers. I understand the Hearing Officer is presently involved in an employment discrimination case in part involving race, involving Blacks, Orientals, and Mexican-Americans against the J. C. Penney Company, that Mr. Menocal has been involved in that case in the spring of 1974, and on those grounds and other grounds which I am sure I could possibly find out with further inquiry into the specific cases which Public Advocates is now handling, that there is certainly the appearance of bias, and I do not feel that my client can get the type of unbiased hearing that he is entitled to."

After hearing argument on the motion, the ALO ruled as follows: "Mr. Brown, I deny your motion. I don't believe it's sufficient on its face. I have never represented the United Farm Workers Union, the Teamsters Union or any other union. I don't believe I've ever represented a grower or farmer although, thinking back to the years I was in private practice, there is a chance that I once represented a grower against a packing house dealing with peaches that weren't ripe.... A race discrimination case involving employment is not the same thing as a labor union dispute such as we have here and is not solely a suit against management. Indeed, in that case, we represent a class of both non-management and management personnel."

During a week's recess, petitioners appealed the disqualification decision to the Board and received an adverse ruling. They then petitioned the Court of Appeal, Fourth Appellate District, for a writ of certiorari which was summarily denied. When the hearings resumed, petitioners

renewed their motion to disqualify the ALO with the filing of the following written declaration of counsel:

"1. I am an attorney licensed to practice law in the State of California and represent Sam Andrews' Sons in the above matters.

"2. I believe Armando Menocal, the hearing officer in the within matters, has a personal and professional bias and therefore, is not qualified within the meaning of Regulation Section 20230.4 to act as the hearing officer for the following reasons:

"(a) Mr. Menocal informed me on December 8, 1975, that he is presently employed with Public Advocates, a San Francisco law firm.

"(b) The 1974 and 1975 Docket sheets for Public Advocates, true and correct copies of which are attached hereto and incorporated herein as Exhibits A, B, and C establish that Public Advocates regularly represents Spanish-surnamed persons and farm workers against agricultural employers, other private employers, as well as governmental agencies in law suits and other legal matters challenging a variety of employment practices including national farm labor policies. Attention is called to *250 Farm Workers* vs. *Secretary of Labor* and the comments attached thereto as set forth at page 12 of Exhibit 'C.'

"(c) On December 8, 1975, Mr. Menocal informed me that since 1974 he has been involved in representing Spanish-surnamed persons in a suit challenging the employment practices of J. C. Penney Company. Reference is hereby specifically made to the comments on *Sebastian* v. *J. C. Penney Company, Inc.* as set forth at item 12 of Exhibit 'A' attached hereto.

"I declare under penalty of perjury that the foregoing is true and correct.

"Executed at Los Angeles, California, on December 11, 1975."

Upon examining this material, the ALO concluded: "I do not find that the declaration or the exhibits attached to it are sufficient to show any grounds for bias or disqualification. The motion is denied."

The hearings proceeded to the merits of the unfair labor practice charges, and the ALO filed a recommended decision adverse to peti-

tioners on most of the major issues. The Board issued its final decision without treating the disqualification issue; it essentially adopted the ALO's findings and recommendations. The Board did declare that it had considered and made an independent review of the entire record in the case.

Although petitioners make a number of supplementary arguments, we will address only their major contention that the ALO improperly failed to disqualify himself pursuant to the Board's regulation 20230.4. As will appear, we conclude that contention lacks both legal and factual support.

I.

At the time of the hearings, regulation 20230.4 governed the disqualification of ALOs. It provided:

"*Disqualification of Administrative Law Officer When Conducting a Hearing.* An administrative law officer may withdraw from a proceeding whenever he deems himself disqualified. Any party may request the administrative law officer at any time following his designation, and before filing of his decision, to withdraw on ground of personal bias or disqualification by filing with him promptly upon the discovery of the alleged fact, a timely affidavit setting forth in detail the matters alleged to constitute grounds for disqualification. If, in the opinion of the administrative law officer such affidavit is filed with due diligence and is sufficient on its face, he shall forthwith disqualify himself and withdraw from the proceeding. If the administrative law officer does not disqualify himself and withdraw from the proceeding, he shall so rule upon the record, stating the grounds for his ruling and proceed with the hearing, or, if the hearing has closed, he shall proceed with issuance of his decision, and the provisions of section 20220.2 with respect to review of rulings of administrative law officers, shall thereupon apply."[1]

Petitioners first contend that regulation 20230.4 was the analogue of Code of Civil Procedure section 170.6 and should be interpreted accord-

---

[1]Regulation 20230.4 was superseded by regulation 20263 effective October 19, 1976. Although the regulations have minor procedural differences, the substantive standard for disqualification is essentially the same. It appears that the language defining the substantive standard for disqualification in regulation 20263 has been taken directly from Code of Civil Procedure section 170, subdivision 5.

ingly to give them the right to automatically disqualify an ALO. The texts of the two sections lend no support to such construction. Code of Civil Procedure section 170.6 provides in substance that any party or attorney to a civil or criminal action has one opportunity to make a motion to disqualify the assigned judge, supported by an affidavit that the judge is prejudiced against such party or attorney or the interest thereof so that the affiant cannot or believes he cannot obtain an impartial trial; if the motion is timely and in proper form, the judge must recuse himself without further proof and the case must be reassigned to another judge. As we stated in *McCartney v. Commission on Judicial Qualifications* (1974) 12 Cal.3d 512, 531 [116 Cal.Rptr. 260, 526 P.2d 268], and reemphasized in *Solberg v. Superior Court* (1977) 19 Cal.3d 182, 193 [137 Cal.Rptr. 460, 561 P.2d 1148], "'It is well recognized that in enacting Code of Civil Procedure section 170.6 the Legislature guaranteed to litigants an extraordinary right to disqualify a judge. The right is "automatic" in the sense that a good faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being required.'" (Italics in original.)

Regulation 20230.4 provided no such extraordinary right. It required the ALO to disqualify himself only when, *in the opinion of the ALO*, the affidavit setting forth the grounds of personal bias or disqualification was sufficient on its face. Thus, under regulation 20230.4, although the ALO was not permitted to contest the allegations of bias, he was not compelled to disqualify himself unless in his opinion the moving party had made a prima facie showing of bias. Clearly then, the regulation did not afford a party the virtually automatic disqualification provided by Code of Civil Procedure section 170.6. We must therefore ascertain whether the facts alleged here constitute a showing of bias.[2]

## II

■ Petitioners imply that a ground for bias was the ALO's practice of law with a firm which in the past had represented individual farm workers in a suit against the Secretary of Labor and which engaged in employment discrimination suits on behalf of Mexican-Americans.

[2]Many of the case authorities interpreting the word bias involved Code of Civil Procedure section 170, subdivision 5, which allows for disqualification "by reason of bias or prejudice." Without analyzing the question, we will assume for present purposes that it is easier to prove bias than prejudice. "A man cannot be prejudiced against another without being biased against him, but he may be biased without being prejudiced." (*Evans v. Superior Court* (1930) 107 Cal.App. 372, 380 [290 P. 662].)

From this, it appears we are to infer that the ALO has some philosophical or political inclination that would make it impossible for him to conduct hearings impartially. Even if the nature of a lawyer's practice could be taken as evidence of his political or social outlook,[3] such evidence, as will appear, is irrelevant to prove bias. Therefore, rather than review the nature of the cases in which the ALO or his firm has participated or attempt to identify what viewpoints those cases might possibly suggest, we will simply reaffirm the general principles that make doing so unnecessary.

The right to an impartial trier of fact is not synonymous with the claimed right to a trier completely indifferent to the general subject matter of the claim before him. As stated in *Evans* v. *Superior Court* (1930) *supra*, 107 Cal.App. 372, 380, the word bias refers "'to the mental attitude or disposition of the judge towards a party to the litigation, and not to any views that he may entertain regarding the subject matter involved.'" In an administrative context, Professor Davis has written that "Bias in the sense of crystallized point of view about issues of law or policy is almost universally deemed no ground for disqualification." (2 Davis, Administrative Law Treatise (1st ed. 1958) p. 131; also see *United States* v. *Morgan* (1941) 313 U.S. 409, 420-421 [85 L.Ed. 1429, 1434-1435, 61 S.Ct. 999]; *Trade Comm'n.* v. *Cement Institute* (1948) 333 U.S. 683, 700-703 [92 L.Ed. 1010, 1034-1036, 68 S.Ct. 793].) This long established, practical rule is merely a recognition of the fact that anyone acting in a judicial role will have attitudes and preconceptions toward some of the legal and social issues that may come before him.

Petitioners revive the same discarded stereotype of bias relative to disqualifying a judicial officer that Judge Jerome Frank addressed many years ago: "Democracy must, indeed, fail unless our courts try cases fairly, and there can be no fair trial before a judge lacking in impartiality and disinterestedness. If, however, 'bias' and 'partiality' be defined to mean the total absence of preconceptions in the mind of the judge, then no one has ever had a fair trial and no one ever will. The human mind, even at infancy, is no blank piece of paper. We are born with predispositions; and the process of education, formal and informal,

---

[3]Amici assert persuasively that imputing the values of a client to a lawyer is an improper exercise inevitably fraught with dangers of erroneous conclusions. That view is consistent with the American Bar Association Code of Professional Responsibility, EC 2-27, which urges every lawyer to accept representation of "unpopular clients and causes ... [r]egardless of his personal feelings ...."

creates attitudes in all men which affect them in judging situations, attitudes which precede reasoning in particular instances and which, therefore, by definition, are pre-judices.... Interests, points of view, preferences, are the essence of living. Only death yields complete dispassionateness, for such dispassionateness signifies utter ·indifference." (*In re J. P. Linahan* (2d Cir. 1943) 138 F.2d 650, 651-652.)

Not only would it be extraordinary to find a judicial officer who is totally without a thought on all issues, the discovery of such a rare intellectual eunuch would suggest an adverse reflection on his qualifications. For example, in a case in which he refused to recuse himself even though as an assistant attorney general he had previously expressed his legal opinion on the issues involved, Justice Rehnquist stated, "Proof that a Justice's mind at the time he joined the Court was a complete *tabula rasa* in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias." (*Laird* v. *Tatum* (1972) 409 U.S. 824, 835 [34 L.Ed.2d 50, 59, 93 S.Ct. 7] (memorandum of Rehnquist, J.).) Similarly, it would be untenable for this court to insist upon selection only of ALOs who have never thought about or expressed an opinion on the broad social, economic or legal issues that inherently underlie a labor dispute.

Therefore, even if the viewpoint attributed to an ALO could be inferred from the nature of his legal practice or his clients—which we do not concede—that would be no ground for disqualification. A trier of fact with expressed political or legal views cannot be disqualified on that basis alone even in controversial cases. The more politically or socially sensitive a matter, the more likely it is that the ALO, like most intelligent citizens, will have at some time reached an opinion on the issue. This is an unavoidable feature of a legal system dependent on human beings rather than robots for dispute resolution.

### III.

Even assuming, arguendo, the political or legal views of an ALO could result in an appearance of bias, we cannot hold, as requested by petitioners, that a mere appearance of bias is a ground for the disqualification of a judicial officer.[4] Code of Civil Procedure section 170,

---

[4]Of course, because of the· statutory mandate of Code of Civil Procedure section 170.6 granting litigants an extraordinary right to disqualify, an appearance of bias can be a ground for the removal of a judge pursuant to that section. (*Solberg* v. *Superior Court* (1977) *supra*, 19 Cal.3d 182.)

subdivision 5, requires disqualification "when it is made to appear probable that, by reason of bias or prejudice of such justice or judge a fair and impartial trial cannot be had before him." Despite some imprecise language in several Court of Appeal opinions, no court in California has ever interpreted section 170, subdivision 5, to mean that an appearance of bias, in the sense of a subjective belief in its existence, is a sufficient ground for disqualification. Appearance, after all, is generally in the eye of the beholder.

The proper analysis of the section was set forth in *Ensher, Alexander & Barsoom v. Ensher* (1964) 225 Cal.App.2d 318, 322 [37 Cal.Rptr. 327]: "In order for the judge to be disqualified, the prejudice must be against a particular party [citations] *and* sufficient to impair the judge's impartiality so that it appears probable that a fair trial cannot be held." (Italics added.) The case thus suggests a two-tier inquiry in determining whether the bias alleged by a party is a sufficient ground for disqualification.

The first inquiry consists of deciding whether the moving party has set forth legally sufficient facts to demonstrate the bias of the judicial officer. After that determination, the challenged judicial officer or a reviewing court must still decide whether such bias will render it probable that a fair trial cannot be held before that judge. In other words, the bias or prejudice must be "sufficient to impair the judge's impartiality." To be sure, once the existence of bias has been established, it will not be difficult to demonstrate that a fair and impartial trial or hearing appears improbable. Nonetheless, this analysis is helpful in explaining that the threshold determination cannot be satisfied and has never been satisfied by an allegation of the mere appearance of bias.

A party must allege concrete facts that demonstrate the challenged judicial officer is contaminated with bias or prejudice. "Bias and prejudice are never implied and must be established by clear averments." (*Shakin v. Board of Medical Examiners* (1967) 254 Cal.App.2d 102, 117 [62 Cal.Rptr. 274, 23 A.L.R.3d 1398].) Indeed, a party's unilateral perception of an appearance of bias cannot be a ground for disqualification unless we are ready to tolerate a system in which disgruntled or dilatory litigants can wreak havoc with the orderly administration of dispute-resolving tribunals. "A judge should not be disqualified lightly or on frivolous allegations or mere conclusions." (*Mackie v. Dyer* (1957) 154 Cal.App.2d 395, 400 [316 P.2d 366].)

Even the cases that loosely speak of an appearance of bias in judicial conduct hold no less. In *Pratt* v. *Pratt* (1903) 141 Cal. 247, 252 [184 P. 956], this court reversed an order of the trial court because of the judge's failure to disqualify himself, stating, "The trial of a case should not only be fair in fact, but it should also appear to be fair." The appearance of unfairness properly resented in *Pratt* was the trial judge's comment, regarding the use of a daughter to impeach the testimony of her mother, that "'I don't know anything that would condemn your client in my eyes so completely as to put that girl on the stand . . . .'" (*Id.* at p. 250.) Such prejudgment of testimony is more than a mere appearance of bias; it evidences actual bias.

In *Pacific etc. Conference of United Methodist Church* v. *Superior Court* (1978) 82 Cal.App.3d 72, 87 [147 Cal.Rptr. 44], the court spoke of a reasonable appearance of prejudgment. Here again, however, there was more involved than appearance of prejudgment: the challenged judge had actually written a letter to the parties during the pretrial phase of the case stating, "'I believe the plaintiffs' claims . . . are meritorious and that they will in all probability prevail at the time of trial.'" (*Id.* at pp. 76-77.)

Thus, our courts have never required the disqualification of a judge unless the moving party has been able to demonstrate concretely the actual existence of bias.[5] We cannot now exchange this established principle for one as vague, unmanageable and laden with potential mischief as an "appearance of bias" standard, despite our deep concern for the objective and impartial discharge of all judicial duties in this state.

[5]Of course, there are some situations in which the probability or likelihood of the existence of actual bias is so great that disqualification of a judicial officer is required to preserve the integrity of the legal system, even without proof that the judicial officer is actually biased towards a party. (See, e.g., *Peters* v. *Kiff* (1972) 407 U.S. 493, 502 [33 L.Ed.2d 83, 93-94, 92 S.Ct. 2163] [discussing *Tumey* v. *Ohio* (1927) 273 U.S. 510 (71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243), in which a judge was disqualified because of his financial stake in the outcome].) In California, these situations are codified in Code of Civil Procedure section 170, subdivisions 1-4. They include cases in which the judicial officer either has a personal or financial interest, has a familial relation to a party or attorney, or has been counsel to a party. The Legislature has demanded disqualification in these special situations regardless of the fact that the judicial officer nevertheless may be able to discharge his duties impartially. The evident and justifiable rationale for mandatory disqualification in all such circumstances is apprehension of an appearance of unfairness or bias. However, the instances addressed in section 170, subdivisions 1-4, are entirely distinct from a case in which bias itself is charged under subdivision 5 of that statute as the ground for disqualification. As explained above, the subjective charge of an appearance of bias alone does not suffice to demonstrate that a judicial officer is infected with actual bias.

The foregoing considerations, of course, are equally applicable to the disqualification of a judicial officer in the administrative system. Indeed, the appearance of bias standard may be particularly untenable in certain administrative settings. For example, in an unfair labor practice proceeding the Board is the ultimate factfinder, not the ALO. (Lab. Code, § 1160.3; *Royal Packing Co. v. Agricultural Labor Relations Bd.* (1980) 101 Cal.App.3d 826, 836 [161 Cal.Rptr. 870].) We therefore fail to see how a mere subjective belief in the ALO's appearance of bias, as distinguished from actual bias, can prejudice either party when the Board is responsible for making factual determinations, upon an independent review of the record. In the case at bar the Board declared it did undertake such an independent review of the entire record. (See, e.g., *Serenko v. Bright* (1968) 263 Cal.App.2d 682, 691 [70 Cal.Rptr. 1].)

## IV.

■ Appellants further contend that the temporary status of the ALO herein should be recognized as a factor in the disqualification analysis because of his increased susceptibility to bias due to the potential influences of a continuing legal practice. However, we know of no case, nor have we been cited to any, that stands for the proposition that a pro tempore judicial officer is peculiarly vulnerable to a disqualification challenge because he is engaged in the practice of law before and after his temporary public service.

Labor Code section 1145 provides: "The board may appoint ... such attorneys, hearing officers, administrative law officers, and other employees as it may from time to time find necessary for the proper performance of its duties. Attorneys appointed pursuant to this section may, at the discretion of the board, appear for and represent the board in any case in court. All employees appointed by the board shall perform their duties in an objective and impartial manner without prejudice toward any party subject to the jurisdiction of the board." It is not disputed that this statute gives the Board the power to use temporary ALOs. Clearly then, the Legislature has deemed it proper for temporary employees to act in a judicial capacity as long as they conduct themselves "in an objective and impartial manner." The Legislature has thus asked no more of temporary ALOs than it or the courts have ever demanded from permanent judicial officers. We have no authority to apply a more rigorous standard than that prescribed in

legislative enactment by allowing an ALO's temporary status to to be used as an element in a showing of bias sufficient for disqualification.[6]

## V.

Petitioners finally contend that bias appears on the face of the ALO's findings and recommended decision. However, because this contention rests on an erroneous legal foundation, there is no need for us to examine the substance of his report.

It is first asserted that bias may be shown by the fact that some of a hearing officer's findings are not supported by substantial evidence. The fallacy of this assertion is explained in Gellhorn et al., Administrative Law—Cases and Comments (7th ed. 1979) page 767: "If the fact finder has allegedly credited unsubstantial evidence while disregarding utterly irrefutable evidence, the issue before a reviewing court should not be whether the fact finder was biased, but whether his findings of fact are supported by substantial evidence on the whole record." (See also, *A. O. Smith Corporation* v. *N. L. R. B.* (7th Cir. 1965) 343 F.2d 103, 110.) If the challenged findings are not supported by substantial evidence, it is the duty of the reviewing court to overturn those findings and it will do so because of failure of proof, not because the results per se establish bias.

There is no reason to explore the heart and mind of the ALO when effective relief is readily available if the reviewing court concludes a finding is unsupported by substantial evidence. To hold otherwise would encourage a losing party to raise the specter of bias indiscriminately, whenever he could demonstrate that one finding of fact in a large administrative record was not sufficiently supported. We decline to cast that cloud of uncertainty over adjudicative proceedings.

But, petitioners assert, that bias may be established where the record shows the hearing officer uniformly believed evidence introduced by the union and uniformly disbelieved evidence produced by the employer. This contention is contrary to the great weight of authority. For example, in *McEwen* v. *Occidental Life Ins. Co.* (1916) 172 Cal. 6, 11 [155 P. 86], it was held that numerous and continuous rulings against a

[6]We note that under canon 5F of the Code of Judicial Conduct, a judge, being under a duty to regulate his extrajudicial activities so as to minimize the risk of conflict with his judicial duties, is not allowed to practice law. However, compliance section B(1) of the code specifically exempts judges pro tempore from canon 5F.

litigant, even when erroneous, form no ground for a charge of bias or prejudice. This rule is tenable in both a judicial and an administrative context. To fulfill his duty, an ALO must make choices when conflicting evidence is offered; thus, his reliance on certain witnesses and rejection of others cannot be evidence of bias no matter how consistently the ALO rejects or doubts the testimony produced by one of the adversaries. As the Supreme Court declared, "total rejection of an opposed view cannot of itself impugn the integrity or competence of a trier of fact." (*Labor Board* v. *Pittsburg S. S. Co.* (1949) 337 U.S. 656, 659 [93 L.Ed.2d 1602, 1606, 69 S.Ct. 1283]; see also *International U., United Auto., A. & A. I. Wkrs.* v. *N. L. R. B.* (D.C.Cir. 1971) 455 F.2d 1357, 1368.)[7]

It follows that the ALO did not err in refusing to disqualify himself. The Court of Appeal, however, confined its decision to this issue; it did not review the substance of the petition. Accordingly, the proceeding is retransferred to that court for a determination of the remaining issues presented by the petition for writ. (See *Taylor* v. *Union Pac. R. R. Corp.* (1976) 16 Cal.3d 893, 901 [130 Cal.Rptr. 23, 549 P.2d 855].)

Tobriner, Acting C. J., and Files, J.,* concurred.

**NEWMAN, J.,** Concurring.—I agree with the retransfer of this proceeding and with Justice Mosk's conclusion that "the ALO did not err in refusing to disqualify himself." (*Ante*, above.) I write separately to propose an analysis that I think might help resolve future cases where recusal of a nonjudicial adjudicator is sought.

By no means is every rule regarding the disqualification of courts and judges a suitable rule for administrative agencies and their adjudicators. (Cf. 2 Davis, Administrative Law Treatise (1st ed. 1958) p. 169 ["Legislative bodies have often created agencies in order to escape supposed biases of the judiciary or in order to obtain administration of a program in accordance with a desired point of view or bias."]; see also the dis.

---

[7]Petitioners also contend that the use of intemperate language and pejorative terms may show bias on the part of an ALO. Without deciding the merits of this contention in the abstract, we find it clear on the face of the record that the ALO used no intemperate language or pejorative terms herein.

*Assigned by the Acting Chairperson of the Judicial Council.

opn. in *Olson* v. *Cory* (1980) 27 Cal.3d 532, 568-569 [164 Cal.Rptr. 217, 609 P.2d 991]; Strauss, *Disqualifications of Decisional Officials in Rulemaking* (1980) 80 Colum.L.Rev. 990, 1010-1027 ("[These] pages begin with a discussion of disqualification in strictly judicial proceedings and then discuss the practice in agency proceedings resembling trials before moving to consider the possible application of this analysis to policymaking."). The statutes vary; the Code of Judicial Conduct and Canons of Judicial Ethics differ significantly from many agency regulations; the due process requirements sometimes diverge; and administrative law precedents often deviate from the judicial counterparts. (With *Olson* v. *Cory, supra,* 27 Cal.3d at pp. 564-565, e.g., compare Davis, Administrative Law of the Seventies (1976) pp. 326-330 and 3 Davis, Administrative Law Treatise (2d ed. 1980) pp. 42-50.)

## *The Statute*

The initial inquiry in most disputes that involve the legality of an administrative order should be, What has the Legislature prescribed? Here the pertinent statute is section 1145 of the Labor Code, which requires that ALRB employees "perform their duties in an objective and impartial manner without prejudice toward any party...."[1]

Justice Mosk's opinion shows, I believe, that no evidence supports a finding that Mr. Menocal did not perform his duties in an objective and impartial manner. The alternate charge, that in fact he was not without prejudice, is answered in the Mosk opinion's discussion of "bias" and "appearance of bias" (*ante,* pp. 789, 791, 792, and 795).[2]

---

[1] The words in section 1145 that I quote postdated the agency action that is challenged here. That they merely codified law already implicit, however, is shown by this excerpt from the Legislative Counsel's Digest of May 31, 1978: "The Agricultural Labor Relations Act of 1975...does not specifically provide that all employees of the Agricultural Labor Relations Board shall perform their duties in an objective and impartial manner without prejudice toward any party who is subject to the jurisdiction of the board. [¶] This bill would amend such act to specifically so provide."

[2] However, I would have cited the administrative law precedents of which, as is noted below, there are many, rather than judicial precedents.

Regarding an appearance of bias we should not overlook Canon 3C(1)(a) of the Code of Judicial Conduct, which reads: "A judge should disqualify himself in a proceeding in which ... his impartiality might reasonably be questioned, including but not limited to instances where ... he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding ...." The California Commentary thereto states: "CCP Section 170, subdivision 5, contains the comparable California statutory disqualification. *Because the Code emphasizes the appearance as well as the fact of propriety, Canon 3C(1)(a) may require more dis-*

## *The Regulation*

The second main inquiry in cases like this concerns agency regulations. The parties here have discussed regulation 20230.4, which governed the ALRA proceeding. It was not well-written,[3] but apparently the board felt that modeling it on the pertinent NLRB rule (29 C.F.R. § 102.37) was justifiable. Respondent's arguments persuade me that (1) "[s]ince the...ALRB regulation regarding disqualification of ALO's was identical in substance to the NLRB regulation, it is NLRB case law which provides the applicable precedent for interpretation"; and (2) NLRB case law overwhelmingly supports Mr. Menocal's ruling here. (See the board's petition filed here on Mar. 4, 1980, pp. 28-34; also the UFW petition filed the same day, pp. 8-11.)

## *Due Process and Administrative Common Law*[4]

Are due process rules inconsistent? Cases cited such as *Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 242 [64 L.Ed.2d 182, 188, 100 S.Ct. 1610, 1613], *Peters v. Kiff* (1972) 407 U.S. 493, 501 [33 L.Ed.2d 83, 93, 92 S.Ct. 2163], and *People v. Ramirez* (1979) 25 Cal.3d 260, 268 [158 Cal.Rptr. 316, 599 P.2d 622], mention "impartial and disinterested tribunal" and "unprejudiced decision-making." Obviously those are

*qualification than the statute requires.*" (Italics added.)

Yet so far as I can ascertain, no one suggests that administrative adjudicators are governed by the Code of Judicial Conduct. (Cf. Newman, *Two Decades of Administrative Law in California: A Critique* (1956) 44 Cal.L.Rev. 190, 195: "The much-touted 'Code of Ethics for Administrative Officials in California' [fn. omitted] has been a flop, but it scarcely follows that law reform regarding ethics is not feasible.") In this case, therefore, we need not address the commentators' question whether Canon 3C(1)(a) does "require more disqualification than the statute requires."

[3]E.g., it speaks of the ALO's withdrawing "on ground of personal bias or disqualification"; and it also mentions "grounds for disqualification." Does that last phrase include grounds other than "personal bias"?

Arguably also, the objector must state only a prima facie case ("If...such affidavit ...is sufficient on its face"). Yet if the ALO refuses to recuse himself he must write out "the grounds for his ruling." That seems to imply that he may dispute alleged facts.

I do not agree with Justice Mosk's conclusion that in regulation 20263, which reflects the board's revision of its rule, "the substantive standard for disqualification is essentially the same [as in 20230.4]." (*Ante*, p.788, fn. 1.) I do agree that 20263's substantive standard appears to have been "taken directly from Code of Civil Procedure section 170, subdivision 5." (*Ibid.*) The California Administrative Procedure Act sets parallel but differing requirements. (See Gov. Code, § 11512, subd. (c).)

[4]See Davis, *Administrative Common Law and the Vermont Yankee Opinion* (1980) Utah L.Rev. 3: "Administrative common law is either common law created by courts about the administrative process, or common law created by agencies through adjudication."

fundamental rights. They have, though, evolved via practice and theory in ways that by no means buttress petitioners' contentions here.[5]

What about administrative law developments? I am persuaded by my reading of (1) Davis, Administrative Law of the Seventies (1976) pages 326-330, (2) 3 Davis, Administrative Law Treatise (2d ed. 1980), pages 42-50,[6] (3) California Administrative Agency Practice (Cont.Ed.Bar 1970) pages 143-144 and 147-148 and its 1979 supplement, pages 34-36, and (4) 1 Cooper, State Administrative Law (1965) pages 338-348 that Mr. Menocal did not err in refusing to disqualify himself in the ALRA proceeding.

### *Other "Prejudice?"*

The final paragraph of the 20-page Court of Appeal opinion in this case reads: "Although the ALO could not perceive the justification of petitioners' position, it seems patently clear to us that an attorney, employed by Public Advocates, Inc. in 1975 or 1976, would be perceived as biased against employers generally in disputes against unskilled low paid Spanish-surnamed workers, asserting a community of interests and that he would particularly appear to be biased against an agricultural employer in a dispute with the UFW."

I believe that the reference therein to "Spanish-surnamed workers" was not appropriate. Also, the court's accompanying footnote ("In all fairness it must be noted that so far as appears from the record, not only all of petitioners' employees, but their supervisory personnel, also, were Spanish-surnamed.") did not, I think, sufficiently rinse out the possibly insidious intimations. (Cf. the amici brief filed on June 3, 1980, on behalf of the San Francisco Lawyers' Committee for Urban Affairs, the NAACP and Mexican American Legal Defense and Edu-

---

[5]Cf. Newman, *Natural Justice, Due Process and the New International Covenants on Human Rights: Prospectus* (1967) Pub. L. 274, 291, footnote 45.

[6]Cf. Davis, *Preface for Volume 3* in 3 Administrative Law Treatise (2d ed. 1980) page xviii: "The law is superior to the common belief within the legal profession that one who has a preconceived conviction about law or policy is for that reason disqualified.... As shown in § 19:2, the law is clear and firm that a preconceived position about law, policy, or legislative facts is not a disqualification.... [¶] Belief in 'neutral and objective' judges is prevalent, but § 19:3 undertakes the uphill task showing that that belief should be confined to such tasks as appraising evidence and applying previously-existing law and cannot be applied to creation of new law or new policy. Taking a position on a controversial issue is intrinsically unneutral."

cational funds, the Salinas CRLA Migrant Farmworker Advisory Committee, Public Advocates, Anthony Amsterdam, Jerome Falk, Ephraim Margolin, Miguel Mendez, Charles Meyers, Gary Near, and E. Robert Wallach, pp. 24-29.) My views are outlined briefly in these final paragraphs of the letter to this court filed on March 21, 1980, by California Rural Legal Assistance, Channel Counties Legal Services Association, and the Mexican American Legal Defense and Education Fund:

"[T]here is a very troubling aspect of the *Andrews* decision below which requires a sensitive, careful and decisive review by this court. Most of the cases cited by the court as 'politically sensitive' involve clients or groups with hispanic names. Significantly, some of these cases in no way involve employment related issues. For example, the case of *144 Spanish-Speaking Telephone Subscribers* v. *Pacific Telephone & Telegraph* involved an attempt to obtain bilingual emergency telephone service; and the case of *Confederacion de la Raza Unida* v. *Brown* involved a challenge to the 1970 census methodology which undercounted the hispanic population. The only relationship of these cases to *Andrews* is a common ethnicity among some of the parties. In this context, it is noteworthy that the administrative law officer in *Andrews* also carries an hispanic surname. The court below said that it seemed clear that Menocal 'would be perceived as biased against employers generally in disputes against unskilled low paid *Spanish-surnamed* workers' (Opinion, pg. 19, (italics added). It is difficult to know from its opinion what the court would have done had Menocal's name been McGuire or had he been involved representing non-hispanic minority groups exclusively (the record reflects that his firm represents Black[s] and women as well as hispanics).

"It is incumbent upon this Court to ensure that there is no hint of law in this state that an individual cannot serve as a decision-maker in a case involving a class of litigants on one side or the other who share a cultural or racial or sexual identity with the decision-maker or his/her clients. There has never been a hint in California law that a Black person or one who has represented Black people cannot sit as a decision-maker in a case involving Black litigants unrelated to the decision-maker or his/her cases. There has never been any hint in California law that a woman cannot sit as a decision-maker in a case involving women's rights simply because she is a woman or because she represented women in women's issues in the past. Nor should there be

any such hint. Nonetheless, the *Andrews* decision below opens these doors. It is incumbent upon this Court to act sensitively and decisively to reclose those doors."

(Cf. Days, *Changing the Heart and Soul of the Judiciary*, L. A. Daily Journal (Oct. 2, 1980) at p. 4, col. 3; and for a memento of still unchanged hearts and souls see *Sato* v. *Hall* (1923) 191 Cal. 510, 512 [217 P. 520] ("The judgment . . . shows that the petitioner is a member of a yellow race, and this showing renders the judgment void . . ."). See too Noonan, Persons and Masks of the Law: Cardozo, Holmes, Jefferson, and Wythe as Makers of the Masks (1976) p. 60: "[Wythe's] pupils followed in his path. Jefferson wanted to end the evil of slavery. So did Henry Clay, James Monroe, and John Marshall. Deploring the evil, they [nonetheless] overcame their objections to it as Speaker, President, and Chief Justice . . . and sustained the system. . . .")

**CLARK, J.**—I dissent.

The appearance of bias—those circumstances leading a reasonable person to doubt the impartiality of the trier of fact—is not only a sufficient but a compelling ground for disqualification. Disqualification on the basis that a quasi-judicial officer appears biased is essential to the health and stability of the adjudicative process for two fundamental reasons. 1. The litigant's due process right to a fair hearing is protected. 2. Public confidence in the integrity of our system of justice is sustained.

The United States Supreme Court has long recognized the due process right to a fair trial in a tribunal free from even the appearance of bias. That court stated in *Peters* v. *Kiff* (1972) 407 U.S. 493 [33 L.Ed.2d 83, 92 S.Ct. 2163]: "[E]ven if there is no showing of actual bias in the tribunal, this Court has held that due process is denied by circumstances that create *the likelihood or the appearance of bias.*" (*Id.,* at p. 502 [33 L.Ed.2d at p. 93]; italics added.)

Freedom from the appearance of bias has also been recognized as essential to public respect for, and belief in, the adjudicative process. "The reason for the rule that trials and quasi-judicial hearings must not only be fair in fact, they must also appear to be fair, is that judicial officers possess no real power except that which is derived from the

respect and confidence of the people. Judicial power will not long endure if public respect and confidence is destroyed because judicial power is exercised in an unfair manner *or appears to be exercised in an unfair manner.*" (*Wood* v. *City Civil Service Commission* (1975) 45 Cal.App.3d 105, 111 [119 Cal.Rptr. 175]; italics added.)

By requiring the near impossible—a showing of actual bias—before a quasi-judicial official must disqualify himself, the majority fail to protect due process and public confidence concerns. The "actual bias" standard protects only against the most egregious and flagrant instances of bias. Only in truly rare cases will such blatant displays of bias be openly disclosed. To illustrate the type of "concrete" showing they would require, the majority discuss cases in which the judicial officer disclosed in no uncertain terms that he had prejudged the issue before testimony was received, or that he had prejudged a case in its pretrial stages.[1] In most cases, however, a judge will not openly express a predisposition in favor of a particular litigant or result. Bias, unlike other deprivations of due process which may be clearly determined on the record, is generally an invisible influence and for that reason must be particularly guarded against.

Under today's ruling, a party appearing before the ALRB will be left without recourse against deprivation of due process by an ALO with an apparently powerful but unprovable predisposition against such party. This court recognized the difficulty of proving actual bias in *Johnson* v. *Superior Court* (1958) 50 Cal.2d 693, 697 [329 P.2d 5]. "It is important, of course, not only that the integrity and fairness of the judiciary be maintained, but also that the business of the courts be conducted in such a manner as will avoid suspicion of unfairness.... Prejudice, being a state of mind, is very difficult to prove, and, when a judge asserts that he is unbiased, courts are naturally reluctant to determine that he is prejudiced." In a later expression, this court stated: "'[I]t is not only the *fact* but the *appearance* of prejudice that should disqualify a judge. This is a rule that appeals to the reason of the Constitution.... [I]t is not the fact of prejudice that would impair the legitimacy of the judi-

---

[1] In the cases discussed by the majority—*Pratt* v. *Pratt* (1903) 141 Cal. 247 [74 P. 742] and *Pacific etc. Conference of United Methodist Church* v. *Superior Court* (1978) 82 Cal.App.3d 72, 88 [147 Cal.Rptr. 44]—the court speaks compellingly of the need for the appearance of fairness. The majority attempt to distinguish these cases by focusing on their particular facts and concluding that actual bias existed. The majority thus emasculate the *critical holdings in these cases* by restricting them to their facts or to facts as egregious.

ciary's role but rather the *probable* fact of prejudice, i.e., the appearance of prejudice. The truth of few, if any, ultimate "facts" of human existence are established to the point of complete certitude which eliminates all possible doubt. A fact as difficult of ascertainment as any person's "prejudice" is seldom, if ever, proven so completely that reasonable persons might not still disagree.'" (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 19 Cal.3d 182, 193 [137 Cal.Rptr. 460, 561 P.2d 1148].)

The majority express concern that an "appearance of bias" standard will be "vague, unmanageable and laden with potential mischief." However, as contemplated by the court in *Evans* v. *Superior Court* (1930) 107 Cal.App. 372, 382 [290 P. 662], the test for appearance of bias is whether the facts honestly stated "'point to a certain condition that would absolutely influence men in the business transactions of life, and when applied to the particular case would lead a reasonable person to hesitate as to whether or not the judge could, under the circumstances, considering the weaknesses of human nature, entirely ignore such facts. . . .'" (*Dakan* v. *Superior Court* (1905) 2 Cal.App. 52 [82 P. 1129].) Such "reasonable man" test would be easy to apply. It becomes unmanageable only to those who consciously choose to find reason not to apply it.

Admittedly, use of an "appearance of bias" standard may result in disqualifications both in cases of actual bias and in cases where there is no bias. But when an individual's fundamental right to a fair hearing is at stake, is it not better to err on the side of justice rather than to impose the risk that in an instance of actual but unprovable bias the prejudiced party will be without remedy?

An appearance of bias should be particularly guarded against in ALRB hearings. First, regulations pertinent to those hearings make them especially vulnerable to charges of bias. An ALO is authorized by regulation to decide the question of his own disqualification when properly challenged. (*Ante*, p. 788, fn. 1.) In contrast, in judicial proceedings a judge is mandatorily disqualified upon peremptory challenge (Code Civ. Proc., § 170.6) and, even after the peremptory challenge has been exercised, continuing disqualification challenges to successor judges—if a prima facie case is stated—are determined by other disinterested judges (Code Civ. Proc., § 170, subd. 5). In National Labor Relations Board (NLRB) hearings the federal counterpart to

the ALO, the administrative law judge, is relatively free from NLRB control (see generally, 5 U.S.C.A. §§ 551-706) and is forbidden from engaging in an independent practice of law, thus avoiding the kind of conflict of interest plaguing the instant case. (29 C.F.R. § 100.735-13(a)(1) (1980).)

It moreover appears that ALRB regulations making hearings vulnerable to charges of bias are directly contrary to the declared purpose of the Agricultural Labor Relations Act (ALRA). That purpose is "to insure peace in the agriculture fields" and "to bring certainty and a sense of fair play to a presently unstable and potentially volatile condition in the state." (Stats. 1975, Third Ex. Sess., § 1, p. 4013 ch. 1.) If this result is ultimately to be achieved—even after five years of continuing instability and distrust in the fields—farm workers and growers alike must be able to appear before the ALRB confident in the knowledge that any cause before that board will be objectively and fairly resolved.

In circumstances calling for particular vigilance against the appearance of bias, the ALO in the instant case blatantly ignored the declared purpose of the ALRA in refusing to disqualify himself. He was then an active member of a public interest law firm, Public Advocates, Inc. He had current and continuing loyalties and allegiances to his firm and to its present and future clients upon whom the major source of the ALO's livelihood depended. While the law firm was dedicated to furthering the interests of the victims of poverty and racial and ethnic discriminations—certainly a most commendable dedication—it is equally as certain that the judicial system should not lend itself to furthering those purposes by condoning standards of conduct not otherwise acceptable.

At the time of these hearings in 1975 and 1976, a public perception existed that agricultural workers were frequently subjected to economic, social and ethnic discriminations and that growers who employed them took advantage of their plight. The growers in this case were in the class of persons against whom the ALO's law firm was dedicated to pursue in advancing the interests of farm worker members of real party in interest, the United Farm Workers, a civil and labor rights organization.

Illustrative of the interests shared by the ALO as advocate in other cases and as trier of fact in the instant case, suggesting impermissible bias, his law firm represented farm workers in *250 Farm Workers* v. *Secretary of Labor Brennan* (No. 70-481 (N.D.Cal., filed 5 Mar.

1970)), a case in which California farm workers charged in a class action the California Department of Human Resources Development (now the Employment Development Department) with operating a grower oriented and dominated farm labor service across the state. Farm workers who are parties in the instant case were presumably members of the class in *250 Farm Workers.*[2]

While the record does not prove actual bias, such proof is unnecessary when, as here, it is replete with the appearance of bias. That appearance is made all the clearer by the ALO's failure to file his findings until 14 months after all evidence had been received, ALRB regulations requiring a 10-day decision making period. Such delay increased the likelihood the ALO's findings would have been colored by events, judgments and feelings related to his practice during the intervening months. The ALO ruled against petitioner growers on all major issues.

The majority agree that the nature of the ALO's law practice is irrelevant to prove bias, because bias refers to a mental attitude towards a party and not to political or social viewpoints regarding subject matter. However, when an ALO's law firm consistently represents the same limited class of clients, it may be reasonably concluded the ALO is programmed not only to a particular viewpoint on legal and social issues but also to a bias in favor of the particular class he represents and, correspondingly, to a predisposition against those classes generally cast in an opposing role. Bias against a class of which a party is a member is sufficient grounds for disqualification. (*Adoption of Richardson* (1967) 251 Cal.App.2d 222 [59 Cal.Rptr. 323].)

The majority argue that because the ALRB may itself engage in factfinding upon its independent review of the record, there exists an adequate remedy when it appears an ALO has been biased. However, after substantial investment of money and other resources in conducting a hearing and producing a decision, the ALRB is naturally reluctant to overturn such decision for any reason other than clear error on the record. Moreover, subtle but nonetheless unfair findings and other influences attributable to a biased ALO cannot be effectively recognized, established or challenged on an administrative record. In the instant

[2]Note the amicus to California Rural Legal Assistance in support of the ALRB and United Farm Workers in this case is joined by Public Advocates, Inc., *the ALO's law firm.*

case the ALRB adopted essentially all of the ALO's findings and recommendations, not even addressing the issue of the ALO's bias. In *Inland Steel Co.* v. *National Labor Relations Board* (7th Cir. 1940) 109 F.2d 9, 21), the court stated: "But we are unable to comprehend how the Board could restore to the petitioner a right of which it had been deprived by the Trial Examiner—that is, a fair and impartial hearing. In fact, the Board, in its decision, made no mention of the charge of bias directed against its Examiner . . . ."

The record establishes as a matter of law an appearance of bias—denying to petitioners due process of law—when the ALO refused to step aside from this case five years ago. The writ should be granted and the decision set aside.

Richardson, J., concurred.

Petitioners' application for a rehearing was denied March 16, 1981. Bird, C. J., did not participate therein. Files, J.,* participated therein. Richardson, J., was of the opinion that the application should be granted.

---

*Assigned by the Acting Chairperson of the Judicial Council.