Filed 11/25/20  A.K. v. R.K. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| A.K.,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>R.K.,<br><br>    Defendant and Respondent. | B299143<br><br>(Los Angeles County<br>Super. Ct. No.<br>19TRFL00417) |
| R.K.,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>A.K.,<br><br>    Defendant and Appellant. | (Los Angeles County<br>Super. Ct. No.<br>19TRO00195) |

APPEAL from orders of the Superior Court of Los Angeles County, Rolf M. Treu, Judge. Affirmed.

The Appellate Law Firm, Corey Parker and Berangere Allen-Blaine, for Appellant A.K.

No appearance for self-represented Respondent R.K.

_____

## I. INTRODUCTION

A.K. (husband) appeals from the trial court's orders granting his former wife R.K.'s (wife) request for a domestic violence restraining order (DVRO) against him and denying his request for a DVRO against wife.[1] Husband contends that the trial court's statements and rulings during the consolidated hearing on the requested DVROs demonstrate that the trial court prejudged the case and was biased against him. We affirm.

## II. PROCEDURAL BACKGROUND

On March 15, 2019, wife filed a request for a DVRO against husband. The trial court granted wife a temporary restraining order against husband; their children were named as additional protected persons.

On April 25, 2019, husband filed a request for a DVRO against wife. The trial court granted husband a temporary

---

[1] Husband's opening brief does not make clear whether he is appealing both orders or just the order granting wife's request for a DVRO. Nevertheless, our decision includes the trial court's denial of his request for a DVRO.

restraining order against wife; their children were named as additional protected persons.

The trial court ordered husband's and wife's requests for a DVRO consolidated. It set the matter for a long cause hearing on June 4, 2019.

Wife and husband were the only witnesses who testified at the hearing of the matter, which took place on June 4, 5, and 6, 2019. Each testified about the other's alleged transgressions, and each denied, for the most part, the other's allegations. At the conclusion of the hearing, the trial court found husband lacked credibility and granted wife's request for a DVRO and denied husband's request for a DVRO.

## III.   FACTUAL BACKGROUND

Husband does not contend on appeal that substantial evidence did not support the trial court's order granting wife's request for a DVRO. Nor does he contend that, based on the evidence, the trial court erred in denying his request for a DVRO. Instead, he argues that the court displayed judicial bias when it twice expressed its belief that wife had, prior to the presentation of husband's evidence, presented sufficient evidence to establish a prima facie case of domestic violence. He further argues that the court displayed judicial bias by interrupting his testimony more often than it interrupted wife's testimony and by sanctioning him $50 for twice violating its order that he answer "yes or no" questions "yes" or "no." We recite the underlying facts of these arguments in our discussion below.

3

# IV. DISCUSSION

Husband contends that the trial court's bias against him in finding that wife had demonstrated a prima facie case of domestic violence prior to his presentation of evidence and in its conduct of the hearing deprived him of due process. We disagree.

## A. *The Domestic Violence Prevention Act (DVPA)*

"Pursuant to the DVPA, (Fam. Code, § 6200 et seq.)[2], a court may issue a protective order "'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved" upon "reasonable proof of a past act or acts of abuse.'" [Citations.]

"The DVPA defines domestic violence, as relevant here, as abuse perpetrated against a spouse or the child of a party. (§ 6211, subds. (a) & (e).) Abuse includes 'plac[ing] a person in reasonable apprehension of imminent serious bodily injury to that person or to another' or 'engag[ing] in any behavior that has been or could be enjoined pursuant to [s]ection 6320.' (§ 6203, subd. (a)(3), (4).) Enjoined conduct includes molesting, striking, stalking, threatening, [sexually assaulting, battering,] or harassing. (§ 6320, subd. (a).) The DVPA requires a showing of past abuse by a preponderance of the evidence. [Citations.]" (*In re Marriage of Davila & Mejia* (2018) 29 Cal.App.5th 220, 225–226, fn. omitted.)

---

2    All statutory references are to the Family Code unless otherwise noted.

4

B.    *Factual Background*

1.    The Trial Court's Prima Facie Case Statements

Wife testified that she and husband were married in 2008. They had two children together.  Husband's domestic violence began in 2017 and continued until wife filed her request for a temporary restraining order in March 2019.

From 2017 to March 2019, husband physically assaulted wife.  He also threatened her by saying that she had to leave the house immediately, he would cancel her H-4 visa and her work authorization, and he would separate her from her children. Daily, husband checked the phone call logs on wife's cell phone. He either requested or took wife's cell phone.  Wife tried to resist giving husband her phone once or twice and husband pulled her hand to "snatch away" the phone violently.

On March 5, 2019, husband told wife that she was not permitted to speak with her mother on the phone for more than 10 minutes and she had spoken with her mother for an hour. Husband held her arm "badly," "pulling it behind" in an effort to take her phone.

Asked if there were physical acts of violence in general, wife responded that it happened every other day.  Husband forcefully threw her on the couch, closed her mouth so she could not breathe or speak, pulled her hands, and dragged her out of the house and closed the door.

On one occasion in 2017, husband dragged wife down the stairs and threw her out of the house.  It was after midnight, and wife did not have her phone, so she could not call anyone for help. On another occasion, in July 2018, husband presented wife with

divorce papers and told her to sign them or leave the house.  Wife refused to sign and began recording husband on her cell phone.  Husband became "really violent" and tried to "snatch" wife's phone.  Wife tried to call 911 on the home's landline, but husband "snatched" it away and "dismantled" it.  Husband then pushed wife out of the house and closed the door.  The assault occurred in front of their eight-year-old son.

Husband also physically assaulted wife on June 25, 2018, holding her tightly by her shoulders and pulling on her hand so that she could not free herself.  Husband had presented wife with divorce papers that she refused to sign.

During the period from 2017 to March 2019, husband sexually assaulted wife five to six times.  On March 6, 2019, husband forced wife to have sexual intercourse with him.  Husband told wife every day that if she wanted to stay in the house with the children, she had to "fulfill [her] duties" as his wife and "satisfy" him.  Because she had no choice, she complied.  On March 6, husband was "very wild" and "act[ed] like an animal."  "There was a lot of force in his actions," which caused wife pain.  Wife stopped husband and told him he "need[ed] to be gentle," but "[t]here was a lot aggression on his face, he was very angry, and he continued doing that."  Wife objected two or three times, but husband did not stop.  Husband sexually assaulted wife in the same manner five or six times.

Prior to the sexual assault wife described, husband forced her to have anal intercourse.  Wife had refused husband's demand, and he told her to comply or it "will be even worse."  Husband said, "[Y]ou will not be able to bear my force."  Wife resisted, trying to push him back, but she was unsuccessful—husband held her "by his hand and [she] was in pain."

6

In December 2018 or January 2019, husband inspected wife's vagina with a flashlight. He told her his intention was to determine if she was "doing something wrong outside" of the house. Husband touched wife during the incident, causing her pain.

About a month prior to the flashlight incident, husband forced wife to have anal intercourse. It was by force and painful and occurred under essentially the same circumstances as the later incident set forth above.

At that point, the trial court recessed. When proceedings resumed, the court inquired of wife's counsel how much longer he intended for wife to testify. Counsel estimated about 45 minutes to an hour and 15 minutes. The court stated, "You have presented several instances on a *prima facie* basis of abuse, of course subject to cross-examination and other evidence. But if you feel you need to present more, it's up to you. But be guided by your time."

Counsel resumed his examination of wife and she testified about other matters in support of her requested DVRO. After wife concluded her testimony, counsel sought to call husband pursuant to Evidence Code section 776.[3] The trial court stated, "I've told you, you presented a *prima facie* case subject to cross-examination, and subject to cross-examination of him when he testifies. Why—what is the need for this procedure?" Counsel responded that he wanted to address inconsistencies in a

---

[3] Evidence Code section 776, subdivision (a) provides, "A party to the record of any civil action, or a person identified with such a party, may be called and examined as if under cross-examination by any adverse party at any time during the presentation of evidence by the party calling the witness."

declaration husband submitted in response to wife's DVRO request. The court told counsel that he could address the matter in cross-examination. Counsel agreed and rested wife's case.

### 2. The Trial Court's Evidentiary Rulings

Throughout the hearing, the trial court interrupted wife's and husband's testimony, instructing them to answer questions directly, particularly yes or no questions. At some point in husband's testimony, after the court repeatedly had admonished husband to answer the question put to him, the court stated, "I'm going to warn you for the last time to answer the question only." It added, "The next time there will be a penalty." Husband said he understood.

Shortly thereafter, husband again failed to answer a yes or no question "yes" or "no" and the trial court sanctioned him $25 for failing to obey its order. Husband's counsel told the court that English was not husband's native language and he would speak to husband and "explain to him exactly how he should be answering the questions, [ ] if you give him one more opportunity." The court suspended imposition of the sanction "pending compliance" with its order.

Later in his testimony, husband again failed to answer a yes or no question "yes" or "no." The trial court imposed the previously suspended $25 sanction. The court later imposed another $25 sanction for the same violation, stating to husband, "Why can you not get this message?"

8

C.   *Analysis*

   1.   Forfeiture

   A party's failure to object in the trial court to the court's alleged bias forfeits the issue on appeal.  (*People v. Snow* (2003) 30 Cal.4th 43, 78; *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 (*Moulton*).)  Husband did not object in the trial court to any of the court's actions that he claims on appeal demonstrate bias.  Accordingly, he has forfeited this issue.  Even if he had not forfeited his argument on appeal, we would reject it on the merits.

   2.   Merits

   Parties have "a due process right to an impartial trial judge under the state and federal Constitutions.  [Citations.]  The due process clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against [a party] or interest in the outcome of the case.  [Citation.]"  (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111 (*Guerra*), disapproved on another ground by *People v. Rundle* (2008) 43 Cal.4th 76, 151.)
   "Mere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom do not demonstrate a bias.  (*Moulton*[*, supra,*] 111 Cal.App.4th [at pp.] 1219–1220 . . . ; [citation].)  Moreover, a trial court's numerous rulings against a party—even when erroneous—do not establish a charge of judicial bias, especially when they are subject to review.  [Citations.]"  (*Guerra, supra*, 37 Cal.4th at pp. 1111–1112; *Andrews v. Agricultural Labor Relations Bd.*

9

(1981) 28 Cal.3d 781, 795–796 (*Andrews*) ["numerous and continuous rulings against a litigant, even when erroneous, form no ground for a charge of bias or prejudice"].)

### a. Prima facie case statements

The trial court's statements to wife's counsel that he had "presented several instances on a *prima facie* basis of abuse" were not judicial bias for a number of reasons. First, they were "[m]ere expressions of opinion by a trial judge based on actual observation of the witnesses and evidence in the courtroom . . . ." (*Guerra, supra*, 37 Cal.4th at pp. 1111–1112; *Moulton, supra*, 111 Cal.App.4th at pp. 1219–1220.) Second, they did not show that the trial court had prejudged the ultimate issue in the case— whether husband had engaged in domestic violence—as the court explained that its preliminary view of the evidence was "of course subject to cross-examination and other evidence." Third, their purpose was to cause wife's counsel to manage his and the court's time. (Code Civ. Proc., § 128, subd. (a)(3) [a trial court has the power to "provide for the orderly conduct of proceedings before it"].)

### b. Evidentiary rulings

Husband asserts that the trial court's evidentiary rulings demonstrated judicial bias. According to husband, the trial court interrupted him at least 12 times and wife about 10 times. Further, the court sanctioned husband twice for failing to follow its order that he answer yes or no questions "yes" or "no" and did not sanction wife when she failed to follow the same order.

10

As we explained above, adverse evidentiary rulings—even when numerous, continuous, and erroneous—do not establish judicial bias. (*Guerra, supra*, 37 Cal.4th at p. 1112; *Andrews, supra*, 28 Cal.3d at pp. 795–796.) Moreover, by husband's own estimate, the trial court's interruptions of his and wife's testimony were relatively even—12 to 10—and did not demonstrate even an inference of bias.

The trial court's imposition of sanctions also did not show bias.[4] The court first warned husband that if he continued to fail to answer questions directly there would be a penalty. Husband said he understood. When husband violated the court's order and the court sanctioned husband, the court suspended the sanction on husband's counsel's promise to explain to husband how he should answer questions. Thereafter, when husband failed to answer a yes or no question "yes" or "no" on two occasions, the court sanctioned him. That the court did not also sanction wife does not establish that the court was biased against husband.

---

[4]     Although husband cites the trial court's imposition of sanctions as evidence of bias, he does not directly challenge the court's imposition of sanctions for his conduct.

11

## V.    DISPOSITION

The orders are affirmed.  Wife is awarded her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


KIM, J.


We concur:



RUBIN, P. J.



MOOR, J.